**WHITESIDE & COMPANY et al., Petitioners,**

v.

**SECURITIES AND EXCHANGE COMMISSION, WASHINGTON, D. C., Respondent.**

No. 76–3318

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Aug. 18, 1977.

Rehearing Denied Sept. 23, 1977.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409.

Clarence K. Whiteside, pro se.

William H. Whiteside, pro se.

David Ferber, Sol. to SEC, Vernon I. Zvoleff, Atty., David J. Romanski, Asst. Gen. Counsel, Washington, D. C., for respondent.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

PER CURIAM:

On October 31, 1974, the District Business Conduct Committee No. 6 (the "Conduct Committee") of the National Association of Securities Dealers, Inc. (NASD) filed a complaint against petitioners, Whiteside & Company, a broker-dealer registered with the Securities and Exchange Commission (SEC) pursuant to Section 15(b) of the Securities Exchange Act, as amended, 15 U.S. C.A. § 78$o$(b), and a member of the NASD, and the firm's two partners, Clarence K. Whiteside and William H. Whiteside. The complaint alleged that petitioners, after computing the "Formula for Determination

**1120**

of Reserve Requirement for Brokers and Dealers" on a monthly basis pursuant to SEC Rule 15c3–3, 17 C.F.R. § 240.15c3–3, failed to make the necessary deposits to the "Special Reserve Bank Account for the Exclusive Benefit of Customers" and failed to notify the SEC, the Securities Investor Protection Corporation (SIPC), the NASD, and the Midwest Stock Exchange (MSE) of their failure to make the required deposits in violation of Article III, Section I of the Rules of Fair Practice[1] of the NASD.

Petitioners denied the allegations of the complaint and a hearing was held before the Conduct Committee. On February 7, 1975, the Conduct Committee issued a written decision finding violations and imposing a censure, a $1,000.00 fine and assessing costs. On appeal to the Board of Governors of NASD this decision was affirmed and the costs of the appeal were assessed against petitioners. Petitioners appealed to the SEC pursuant to Section 19(d) of the Securities Exchange Act, as amended, 15 U.S.C.A. § 78s(d). After argument and upon consideration of the record of proceedings before the NASD, the SEC affirmed the NASD's actions and dismissed the appeal. Upon petition for review pursuant to Section 25(a)(1) of the Securities Exchange Act, as amended, 15 U.S.C.A. § 78y(a)(1), we affirm.

■ Our review on this appeal is not *de novo* but limited by Section 25(a)(4) of the Securities Exchange Act, as amended, 15 U.S.C.A. § 78y(a)(4), which provides that "findings of the Commission as to the facts, if supported by substantial evidence, are conclusive." The SEC is the agency mandated by statute to review the imposition of disciplinary sanctions by self-regulatory organizations such as NASD, 15 U.S.C.A. § 78s(d), and we should not undermine its role by a grudging interpretation of the legislation. This is particularly important in an area of expertise as intricate as the securities field where public interest and public image are very important. Of

course, we would be remiss if we simply deferred to the experts and did not insist that decisions be supported by substantial evidence.

The NASD found that computations as of January 31 and May 30, 1974, showed that deposits of approximately $11,000.00 and $14,000.00, respectively, were required to be made in a special reserve account but that no deposits in any amount were made. Petitioners did not contest the fact that no deposits were made, or notice given, but they asserted that "corrected computations" revealed that no deposits were necessary. The NASD found that, even if petitioners' "corrected computations" were accepted, deposits to the reserve account would nevertheless have been required. Petitioners responded that this was so only because certain cash prepayments made by customers were incorrectly included as liabilities in the determination of the reserve requirement.

The NASD also found that petitioners failed to make a deposit of over $43,000.00, or give timely notice of their failure, as of June 30, 1974. Petitioners' computation of July 8, 1974, indicated that a deposit of over $50,000.00 was required. Instead, a re-computation was made on July 11, 1974, and a deposit of $22,282.22 was made to the special reserve account. Petitioners sought to excuse their failure to make a timely deposit on the basis that one partner was on vacation and a new girl failed to make the deposit. Petitioners also countered by asserting that the failure was cured by the later deposit and that, at any rate, they, in fact, had enough money to cover the deficiency. Finally, petitioners contended that the time lag in the transmission of information to them from the Midwest Clearing Corporation made compliance with the regulatory scheme impossible.

■ The SEC upheld the sanctions imposed on petitioners. In this regard, however, the SEC noted that this was the first case in which the provisions of Rule 15c3–3

1. Article III, Section I of the NASD's Rules of Fair Practice requires that an NASD "member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade."

had been interpreted and, therefore, the January and May instances would be excluded "from consideration in determining whether the sanctions imposed by the NASD are excessive."[2] Thus, our review in this case is limited to the question of whether the SEC's decision that petitioners violated the Rules of Fair Procedure of the NASD is supported by substantial evidence and whether the SEC decision finding that the NASD sanctions were not excessive is arbitrary.[3]

■ There can be little dispute with the conclusion that petitioners violated Rule 15c3–3. Under the rule small firms, such as Whiteside & Company, are required to compute on a monthly basis their net aggregate indebtedness to customers as of the last business day of the month. Petitioners failed to do so. If the computation shows a net credit balance, the broker-dealer must make a deposit in a special reserve account which, when added to the existing balance in the account, will equal at least 105% of the total credit balance. While petitioners untimely computed a new credit balance, they still failed to make the required deposit. A broker-dealer who fails to make a required deposit is immediately to notify the SEC, the SIPC and other regulatory bodies by telegram. Petitioners did not immediately notify anyone. The finding that petitioners violated SEC Rule 15c3–3 and, consequently, NASD's Rules of Fair Practice, is clearly supported in the record by substantial evidence.[4]

■ Section 19(e)(2) of the Securities Exchange Act, as amended, 15 U.S.C.A. § 78s(e)(2), provides in relevant portion that the SEC "may cancel, reduce, or require the remission" of a sanction imposed by the NASD only if it finds that the sanction "is excessive or oppressive." The SEC recognized in this case that the excuses expounded by petitioners were mitigating factors in the consideration of sanctions to be im-

2. The basis for excluding the January and May instances appears to be that the SEC felt that the regulations were ambiguous enough to render petitioners' exclusion of prepayments from customers in their computations excusable.

3. Petitioners seem to urge several other points on this court. Most of them do not merit consideration here because they were not raised before the SEC. *See Unemployment Compensation Comm'n v. Aragan,* 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946); *Cotherman v. FTC,* 417 F.2d 587 (5 Cir. 1969). Furthermore, many of those claims are so nebulous that we cannot determine precisely what the issue is, and cannot expect the SEC to do so. One issue, however, reached the SEC and should be addressed here. Petitioners' allege that Rule 15c3–3(i) violates their rights against self-incrimination by compelling them to notify the SEC and other regulatory bodies of a failure timely to make a reserve deposit as required by Rule 15c3–3(e). This rule does not violate the petitioners' rights in this regard because 15c3–3 is regulatory, not penal. *See Sloan v. SEC,* 547 F.2d 152 (2 Cir. 1976).

4. One of petitioners' principal arguments, especially as concerns the January and March computations, would have the Commission rule that customers' cash prepayments for subsequent purchases by the broker are not liabilities to customers within the meaning of Rule 15c3–3. The Commission found that such prepayments were such liabilities:

When applicants' customers tendered their checks, they parted with their money. Applicants' acceptance of those prepayments created liabilities to those customers as of the end of the months in question, and those liabilities were included within the rule's definition of "other credit balances."

Applicants point out that the rule's definition of "other credit balances," under which category these prepayments should have been included in the computations, speaks of "cash liabilities." They argue that what was owed to these customers as of the end of the subject months was not cash but securities. This argument has some appeal because it is certainly true that the customers' bargains with applicants called for the purchase of securities. However, it is also true that, prior to settlement, applicants held customer funds for which applicants were clearly liable if the transactions were not consummated. Applicants' argument amounts to a semantic distinction which lacks merit in view of the clear import of Rule 15c3–3. Any ambiguity caused by the use of the term "cash liabilities" in the definition of "other credit balances" can be readily resolved by reference to Exhibit A to the rule which contains the formula for computing the reserve requirement and which makes it amply clear that "customers' securities failed to receive" are to be treated as credit balances.

We agree with the Commission.

posed. In light of the fundamental nature of the reserve account system to the safeguarding of customers' funds, however, the SEC concluded that the sanctions were appropriate. We cannot say that this conclusion was arbitrary or an abuse of discretion.

We AFFIRM.