**WHITESIDE AND CO., INC. and William H. Whiteside, Petitioners,**

**v.**

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 88–4921**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

July 24, 1989.

William H. Whiteside (ProSe) Lubbock, Tex., for petitioners.

Richard A. Kirby, Daniel Goelzer, General Counsel, Thomas C. Riesenberg, Robert L. McCloskey, S.E.C. Washington, D.C., for respondent.

Before GEE, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

**PER CURIAM:**

◼ Petitioner Whiteside & Company, a broker-dealer firm, and its president, petitioner William Whiteside, seek judicial review of a Securities and Exchange Commission order under 15 U.S.C. § 78y(a)(1). The SEC, after *de novo* review, affirmed disciplinary sanctions imposed by the National Association of Securities Dealers, agreeing that petitioners had violated the SEC's net capital regulations on four dates in 1982, as well as violating certain reporting and recordkeeping requirements. The SEC's factual findings are conclusive in this court if supported by substantial evidence. *Whiteside & Co. v. S.E.C.*, 557 F.2d 1118, 1120 (5th Cir.1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978); 15 U.S.C. § 78y(a)(4).

◼ Petitioners first contend that the net capital calculations relied on by the SEC were based on certain errors in the company's books which had not been corrected. The argument essentially admits that SEC made its calculations based on the company's books. Thus, there was substantial evidence for the SEC's findings even if petitioners offered an alternative version of the facts. Further, petitioners do not point us to the portions of the record which in their view show the SEC's error.

Petitioners next challenge the SEC's conclusion that certain transactions between Clarence Whiteside and the firm were shams. The SEC found that on two occasions the firm "parked" bonds in Clarence Whiteside's account to avoid taking "haircuts" which would have adversely affected the firm's net capital calculations. On June 11, the firm purported to sell certain bonds to Whiteside's account and then buy them back on the same day at the same price, with settlement to occur three days later. Both the purchase and sale of the bonds were transacted at a price well above the going market rate. In the second transaction, on August 3, Whiteside bought a substantial quantity of bonds from the firm. Over the next two weeks, he sold many of the bonds back to the firm at the same price, which then sold them to customers at a slight premium. Clarence Whiteside admitted that one reason for purchasing the second set of bonds on August 3 was to avoid having the firm take a haircut on them, though he offered other reasons for the transaction as well. We conclude there was substantial evidence to support the finding that the firm parked bonds in Clarence Whiteside's account on the two dates in question.

◼ Petitioners complain that the NASD examiner who investigated them was biased, and sought to find anything he could construe as a violation. The violations asserted by the NASD examiner were reviewed by the NASD District Committee, the NASD Board of Governors and then reviewed *de novo* by the SEC. That the SEC was not biased appears from the fact that it threw out four of the net capital violations found by NASD for lack of evidence. The violations it sustained were based on evidence in the record before it. The SEC found no support in the record for the position that NASD was biased against petitioners. Further, we find no harm to petitioners even if the NASD examiner was biased, since the procedures were adequate to screen out the effects of any bias in the initial investigation.

◼ The SEC found that petitioners violated the requirement that member firms give immediate notice of a net capital deficiency. 17 C.F.R. § 240.17a–11(a). The Commission found that the duty to notify attached when NASD informed petitioners that it had found net capital deficiencies. Petitioners argue that they did not know they had an ongoing duty to report net capital problems because the regulation itself only provides for reporting such violations within 24–hours of their occurrence. However, the SEC has long interpreted this regulation to require notice at the time one learns of a violation, even if this occurs much later. *See In re Management Financial, Inc.*, 46 S.E.C. 226 (1976). Petitioners also contend that they had no reporting obligation because they did not believe a net capital violation had occurred. In the SEC's view, petitioners did not have to agree with NASD's findings, but were still required to give notice. We agree. To

allow firms to avoid the reporting requirements merely because they disagree on the existence of a net capital deficiency would effectively eviscerate the reporting regulations. At least in this situation, where petitioners had been informed that they were in violation by the NASD, the duty to report arose. Further, we do not agree that the reporting requirement violates petitioners' rights against self-incrimination. We have held that a similar reporting requirement is regulatory rather than penal. *Whiteside & Co.*, 557 F.2d at 1121 n. 3.

Petitioners complain that the NASD Board of Governors refused to postpone a hearing in their case, even though Clarence Whiteside was unable to travel due to required leukemia treatments. NASD had already postponed the hearing one time at petitioners' request. Petitioners had already had the opportunity to present their case to the NASD District Committee, and those proceedings were transcribed. While the hearing date was concededly inconvenient for petitioners and for Clarence Whiteside, we do not believe NASD was required to postpone the hearing until Mr. Whiteside was well enough to travel. Further, the sanctions against Clarence Whiteside were vacated after his death. Thus, any violation of his rights are not at issue in this appeal.

Petitioners also challenge the SEC's decision to affirm the NASD's $10,000 fine and costs of nearly $1,500. The SEC may overturn or reduce an NASD sanction if it is "excessive or oppressive." 15 U.S.C. § 78s(e)(2). We will affirm the Commission's decision absent arbitrariness or an abuse of discretion. *See Whiteside & Co.*, 557 F.2d at 1121–22. The fine in this case was not excessive, given the seriousness of the violations and the fact that petitioners have been disciplined previously. Petitioners also complain that NASD's costs are not itemized. We cannot tell from the record whether this argument was made before the SEC. Further, there is some itemization apparent in the record, in that the costs are divided into $1,473.56 as expenses of the hearing in front of the NASD District Committee and $25 for the

appeal to the NASD Board of Governors. We find no abuse of discretion in the SEC's decision to affirm the sanctions.

AFFIRMED.