**In the Matter of JIM'S GARAGE, Debtor.**

**Bankruptcy No. 84–02713–S.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Nov. 24, 1989.

Robin H. Kyle, Detroit, Mich., for panel trustee.

Marion J. Mack, Jr., Asst. U.S. Trustee, Detroit, Mich., for U.S. trustee.

*OPINION AND ORDER RELATIVE TO THE U.S. TRUSTEE'S MOTION FOR THE PRODUCTION OF DOCUMENTS*

WALTER SHAPERO, Bankruptcy Judge.

This case was commenced as a voluntary Chapter 11 proceeding on July 23, 1984 and was converted to a Chapter 7 proceeding on December 5, 1986. On December 10, 1986, a panel trustee was appointed ("Panel Trustee").

On April 5, 1989, the United States trustee assumed jurisdiction over bankruptcy cases in the Eastern District of Michigan. In June 1989, after its telephone requests were not responded to, the United States trustee's office sent a formal written request to the Panel Trustee directing him to file an interim report within seven (7) days. The U.S. trustee's review of bank records obtained directly from the bank and official court records apparently had indicated unexplained activity in the savings and checking accounts maintained by the Panel Trustee. The Panel Trustee failed to provide the U.S. trustee with a satisfactory explanation or response, but indicated that an accounting would be provided to the U.S. trustee's office within a week. That was not done.

The U.S. trustee then filed a motion seeking removal of the Panel Trustee and production of records. This court held a hearing on August 27, 1989 and the Motion to Remove Trustee was denied as moot due to the contemporaneous resignation of the Panel Trustee in this case as well as in all cases in which he was then acting as trustee.

This Court entered an order which required the U.S. trustee's office to appoint a successor trustee to complete the administration of the estate. That same order required the Panel Trustee to cooperate with the U.S. trustee and the successor Panel Trustee, and to:

(1) file an accounting of his administration of *Jim's Garage, Inc.* with the court and serve a copy of the same with the United States trustee, by October 27, 1989;

(2) turn over to the U.S. trustee's office all bank statements, deposit slips, cancelled checks, bank reconciliations, and all other banking or financial records relating to checking or savings accounts maintained for the estate ("Trustee's Records") subject to this court's ruling on the Panel Trustee's asserted Fifth Amendment privilege against self-incrimination; and

(3) turn over to the U.S. trustee, all other documents and records relating to the bankruptcy case, subject to this court's ruling on the Panel Trustee's asserted Fifth Amendment privilege against self-incrimination.

The issue to be resolved is whether a resigned bankruptcy Panel Trustee is protected by the Fifth Amendment privilege against self-incrimination from compelled production of the indicated records.

The U.S. trustee argues that:

(A) The records maintained by the Panel Trustee in connection with the administration of the estate were generated as part of his required duties as a trustee, and that the records are not private documents, but records of the estate held, and required to be kept, by a fiduciary, and as such are essentially public in nature; and

(B) The U.S. trustee has a right to these records notwithstanding the asserted Fifth Amendment privilege due to the U.S. trustee's responsibility for supervising the Panel Trustee's conduct and performance.

The Panel Trustee argues that the production of the records is a compulsory production in violation of his Fifth Amendment privilege against self-incrimination, asserting that those records are essentially private in nature.

## OPINION

The decision in this case is governed essentially by the principles enunciated in *Grand Jury Subpoena Duces Tecum, Underhill*, 781 F.2d 64 (6th Cir.1986), cert. denied, *Underhill v. United States*, 479 U.S. 813, 107 S.Ct. 64, 93 L.Ed.2d 23 (1986), a case involving the quashing of a subpoena for odometer records required to be kept by automobile dealers under a federal statute. The court stated:

The first issue we must decide is whether the contents of the requested documents fall within the required records exception to the Fifth Amendment. In making this determination we are mindful that the privilege against self-incrimination must be construed so as to preserve its constitutional imperative "as a bulwark against iniquitous methods of prosecution." *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). In order to meet this narrow exception, three requirements must be met. First, the purposes of the government's inquiry must be essentially regulatory, rather than criminal. Second, the records must contain the type of information that the regulated party would ordinarily keep. Third, the records "must have assumed 'public aspects' which render them at least analogous to public documents." *Grosso v. United States*, 390 U.S. 62, 67–68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968) (interpreting *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948).

781 F.2d at 67.

With regard to the first inquiry, the Court in *Underhill*, stated as follows:

[I]n determining whether the *contents* of the documents, which were prepared prior to the grand jury subpoenas, fall within the required records exception, we believe the relevant inquiry is whether the statute and regulations which require

their maintenance are regulatory in nature.

\*     \*     \*     \*     \*     \*

Although the specific provisions of the Act and the regulations requiring maintenance of odometer statements may have criminal application, these provisions serve the overall purpose of enforcement of an essentially regulatory program. \* \* \* Thus, the Act's record keeping requirements do not serve *only* criminal prosecution purposes.

*Id.* at 67, (emphasis included) (citations omitted).

The records sought under the order issued by this Court are bank statements, deposit slips, cancelled checks, bank reconciliations, and any and all other checking and/or financial records relating to any checking or savings account maintained for the bankrupt estate, as well as other documents and records relating to that estate.

This Court does not think it can be reasonably argued that the provisions of the Bankruptcy Code which directly or indirectly mandate the keeping of the records sought can be said to serve *only* criminal prosecution purposes. Nor can it be argued that such provisions do not have as their primary purpose the proper administration of bankruptcy estates and the enablement of those charged with the oversight and supervision of bankruptcy trustees, to perform their statutory duties, in connection therewith. Bankruptcy Code § 704, details the duties of a trustee. Among the enumerated duties are the duties to "be accountable for all property received" and to "furnish such information concerning the estate and the estate's administration as is requested by a parties in interest" and to "make a final report and file a final account of the administration of the estate with the court and with the United States trustee".

To quote one commentator on the meaning of this duty:

The ability of the trustee to meet the duty of accountability to the satisfaction of parties in interest or the Court requires that good records be kept. Without exception, money received should be deposited in a bank account. Duplicate deposit slips should be made and retained. The cash receipts list should be kept, giving dates, sources, descriptions of transactions, and amounts. All paid checks drawn by the trustee and bank statements should be retained.

1 *W. Norton, Bankruptcy Law and Practice* § 11.24, at 61 (Callaghan, 1990).

Fleshing out the requirements of the Statute, Bankruptcy Rule 2015, which relates to the duty of a trustee or debtor-in-possession to keep records, make reports and give notice of case, etc., provides in part that: "A trustee or debtor-in-possession shall ... (2) keep a record of receipts and the disposition of money and property received; (3) file the reports and summaries required by § 704(8) of the Code ..." A commentator on these rule requirements states:

The duty to account for all monies received requires that the trustee set up and maintain proper books and records for all funds taken into possession. The books should identify the source of the funds and the date of the receipt. The books should similarly itemize each disbursement showing the date of disbursement, the payee, and the purpose of each disbursement. Except in the special case of petty cash disbursements, all funds disbursed by the trustee must be by check or draft and contemporaneously entered into the trustee's books of account. The check itself should indicate the purpose for which the disbursement is made. This will permit independent verification and analysis of the trustee's disbursement, particularly if the trustee's books of account are accidentally destroyed.

*I. Sulmeyer, M. Rush, D. Lynn, M. Rochelle & R. Mottern, Collier Handbook for Trustees and Debtors-in-Possession* § 10.03(1), at 10–11, 10–12 (L. King ed. 1989). See also, Bankruptcy Rule 6003, which states that "disbursement of estate funds shall be by check unless another method is approved by the Court."

The *Handbook for Chapter 7 Trustees* issued by the Executive Office for United

States Trustees of the U.S. Department of Justice (June, 1988 edition), at pages 55 through 58, under the subheading "Financial Record Keeping" details the records to be established and maintained, which include, among other records, all of those sought in this case. The Panel Trustee is appointed by the United States trustee, pursuant to the provisions of 28 U.S.C.A. §§ 581–589a (Supp.1989). Under that statute the United States trustee is charged with the duty to "(3) supervise the administration of cases and trustee in cases under chapter 7, 11, or 13 of title 11 ..." 28 U.S.C. § 586(a)(3) (Supp.1989). One commentator has stated the following with reference to the relationship between the United States trustee and the Panel Trustees:

> The establishment of a panel of private trustees and supervision of those appointed to serve in cases under the Code is a primary function of the United States trustee and was considered by the drafters of the Code to be "his most important contribution to the administration of the bankruptcy system." "Supervised" is a broad term. In the context used in the Code it means the United States trustee shall coordinate, direct and inspect continuously at first hand the accomplishments of the private trustees. It requires oversight of the trustees with the power of direction and decision in the implementation of the trustees duties. It requires critical evaluation of trustee's performance and implies recommendation as to action to be taken.
>
> The word "watchdog" is used several times in the House Report discussing the United States trustee system. This does not imply interference; rather it means that the United States trustee keep close watch over and evaluate the performance of trustee serving in bankruptcy cases.

1, *Collier on Bankruptcy*, § 6.18[2][a], at 6–78 (15th Ed.1987) (footnotes omitted).

In pursuance of this supervisory function, Bankruptcy Rule X–1007 was promulgated. It is entitled "Duty of Trustee or Debtor in Possession To Make Reports, Furnish Information, and Cooperate with the United States Trustee." Section (b) of that rule states as follows:

> The trustee or debtor in possession shall cooperate with the United States trustee by furnishing such information as the United States trustee may reasonably require in supervising the administration of the estate.

Bankruptcy Rule X–1007(b).

It is true that there are criminal statutes designed to deal with "Bankruptcy Crimes", *See* 18 U.S.C. §§ 151, 152, 153, 154, 155 (1989). Included among them is a statute which provides that a trustee who refuses to permit a party in interest a reasonable opportunity for the inspection of documents and accounts relating to the affairs of estates in his charge is subject to a fine and forfeiture of his office. 18 U.S.C. § 154 (Supp.1989). Despite the existence of the criminal statute(s), the statutory Bankruptcy Code and scheme clearly, specifically or necessarily mandate the keeping of records sought in this case in the context of an essentially regulatory scheme.

One may not think of the Bankruptcy Code (coupled with statutory provisions relating to the United States trustee) as "regulatory" statutes in the sense that an odometer statute might be perceived. However, in a substantive sense it *is* regulatory, particularly as it relates to the performance by, and supervision of, case trustees. The primary thrust of their enforcement is by way of various civil (not criminal) actions and proceedings. Thus the first requirement is met.

The second requirement of *Underhill* is that the records contain the type of information that the regulated party would ordinarily keep. As noted the records sought by the order of this Court relate to bank statements, deposit slips, cancelled checks, bank reconciliations and other banking and/or financial records relating to checking or savings accounts maintained for the bankrupt estate. A trustee cannot comply with the mandate that he "keep a record of receipts and the disposition of money and property received" and "file the reports and summaries required", unless he keeps

the records sought in this case. The filing of reports mandated by various sections of the statutes and rules, necessarily implies the maintenance of underlying records necessary for the preparation of those reports. It cannot be reasonably argued that such records would not be ordinarily kept by a case trustee.

The third requirement is that the records "must have assumed public aspects which render them at least analogous to public documents." The periodic reports which a trustee is required to "file", are by virtue of those filings, public records in any sense of that term. Should there be a question or issue as to the "account" of a trustee (accounts which themselves are specifically or in effect allowed by the court after a hearing or an opportunity for one) a party in interest would be entitled or be given the opportunity to inspect the underlying records which afford the basis for such accountings.

The fact that there is a clear duty to maintain the underlying records being sought (and the fact that it apparently is a fineable offense to refuse to permit a party in interest a reasonable opportunity to inspect documents and accounts relating to the affairs of the estate) leads one to the inescapable conclusion that in fact, at the very least, these books and records that are being sought have public aspects of a sufficient nature to permit that aspect of the required records exception to the Fifth Amendment to have been met. As also noted in *Underhill*, compliance with the relevant record keeping requirements is not incriminating on its face. Administering bankrupt estates is not, in and of itself, an illegal activity. The maintenance of the indicated records is an important, effective and absolutely necessary means of properly carrying out the duties and responsibilities of a trustee appointed to administer estates under the Bankruptcy Code.

Finally, it should be noted that the Panel Trustee voluntarily assumed a duty and responsibility. In *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), Justice Hughes states:

[T]he physical custody of incriminating documents does not of itself protect the custodian against their compulsory production. The question still remains with respect to the nature of the documents and the capacity in which they are held. *It may yet appear that they are of a character which subjects them to the scrutiny demanded and that the custodian has voluntarily assumed the duty which overrides his claim of privilege.* * * * The principle applies not only to public documents and public offices, but also to records required by law to be kept in order that they may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established. There the privilege, which exists as to private papers, cannot be maintained.

221 U.S. at 380, 31 S.Ct. at 544 (emphasis added).

In the *Underhill* case, the Court made a further determination as to whether or not the *act of producing the documents* (rather than the contents of the documents themselves) is nonetheless protected by the Fifth Amendment on the theory that arguably the act of producing those records is protected where the production itself would require testimonial self-incrimination by the record holder. This Court is bound by the finding in the *Underhill* case that "in order to have meaning the required records exception must apply to the act of production as well as the contents of the documents to which the doctrine applies." 781 F.2d at 70.

In light of the foregoing, it is the ruling of this Court that the assertion by the Panel Trustee of a Fifth Amendment privilege is inappropriate and that he is therefore required to comply with the provisions of the order of this Court dated September 26, 1989. He shall do so on or before December 15, 1989.

IT IS SO ORDERED.