In re **GRAND JURY PROCEEDINGS.**

and

In re **JIM'S GARAGE, INC., Debtor.**

Misc. No. 90–1581.
Civ. A. No. 89–CV–73630–DT.
Bankruptcy No. 84–02713–S.

United States District Court,
E.D. Michigan, S.D.

Oct. 12, 1990.

Robin H. Kyle, Detroit, Mich., for petitioner/appellant.

Joe Mack, Detroit, Mich., for appellee in Civ. A. No. 89–73630.

Lynn A. Helland, Asst. U.S. Atty., Detroit, Mich., respondent in Misc. No. 90–1581.

## OPINION AND ORDER

ROSEN, District Judge.

### FACTS

These two separate cases arose out of the independent efforts of the federal grand jury impanelled in the Eastern District of Michigan and the office of the United States Trustee for the Eastern District of Michigan, respectively, to obtain the production of certain documents from Sherman Sharpe, Jr., the former Chapter 7 bankruptcy trustee of Jim's Garage, Inc., Debtor. The miscellaneous matter is before the Court on Sharpe's Motion to Quash Grand Jury Subpoena. The civil action is before the Court on Sharpe's appeal of Bankruptcy Judge Walter Shapero's December 15, 1989 Order requiring Sharpe to file his final accounting as trustee in the bankruptcy case and to turn over to the United States Trustee all documents relating to Sharpe's administration of the bankruptcy estate, which were previously withheld by Sharpe based upon his assertion of a Fifth Amendment privilege against self-incrimination. Both matters were brought before the Court for oral argument on October 4, 1990.

1. Section 153. Embezzlement by trustee or officer

Whoever knowingly and fraudulently appropriates to his own use, embezzles, spends, or transfers any property or secretes or destroys any document belonging to the estate

The bankruptcy case was commenced as a voluntary Chapter 11 case on July 23, 1984 and was subsequently converted to Chapter 7 on December 5, 1986. On December 10, 1986, Sharpe was appointed Chapter 7 Trustee.

On April 5, 1989, the United States Trustee assumed jurisdiction over bankruptcy cases in the Eastern District of Michigan. According to Sharpe, in June, 1989, Assistant United States Trustee Marion J. Mack contacted Sharpe and informed him that his review of bank records revealed criminal activity by Sharpe in conjunction with his administration of the bankruptcy estate, including violations of 18 U.S.C. Section 153.[1] Mack consequently demanded that Sharpe provide his office with an interim report and accounting of his administration of the estate within 7 days. Based upon his assertion of a Fifth Amendment privilege, Sharpe refused to supply an interim report or to turn over documents concerning the estate.

Mack then filed a motion in the Bankruptcy Court to remove Sharpe as trustee and to seek production of the records. The Bankruptcy Court heard the motion on August 27, 1989. The Bankruptcy Court initially held that the motion to remove Sharpe was moot since Sharpe had voluntarily resigned.

However, the Bankruptcy Court entered an Order on September 26, 1989 which provided as follows:

### ORDER

The United States Trustee filed a Motion to Remove Trustee in this matter. The trustee, Sherman Sharpe, Jr., responded to the motion and, as part of his response, tendered his resignation as trustee.

At the hearing on the United States Trustee's Motion on August 21, 1989, Mr. Sharpe reiterated and clarified that the

of a debtor which came into his charge as trustee, custodian, marshal, or other officer of the court, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. Section 153.

resignation is to be effective in this matter and in all cases in which he serves as trustee.

The Court having determined that the relief sought by the United States Trustee was no longer at issue, finds the Motion To Remove to be moot, and instructed the United States Trustee to prepare an order; now therefore,

It Is Ordered that Sherman Sharpe, Jr. shall file a final accounting of his administration of *Jim's Garage, Inc.* with the Court and serve a copy on the United States Trustee on or before October 27, 1989;

It Is Further Ordered that Sherman Sharpe, Jr., subject to this Court's ruling on his assertion of the 5th Amendment privilege against self-incrimination, shall turn over to the United States Trustee, all bank statements, deposit slips, cancelled checks, bank reconciliations, and any and all other banking and/or financial records relating to any checking or savings account maintained for the estate of *Jim's Garage, Inc.*

It Is Further Ordered that Sherman Sharpe, Jr., subject to this Court's ruling on his assertion of the 5th Amendment privilege against self-incrimination, shall turn over to the United States Trustee, all other documents and records relating to the case of *Jim's Garage, Inc.*

It Is Further Ordered that the United States Trustee shall appoint a successor trustee, pursuant to 11 U.S.C. Section 703(a), to complete the administration of the estate of *Jim's Garage, Inc.*

It Is Further Ordered that Sherman Sharpe, Jr. shall cooperate with the United States Trustee and any successor trustee appointed by the United States Trustee, consistent with and in accordance with the laws of the United States, in furtherance of the successful completion of the administration of the estate *Jim's Garage, Inc.*

/s/ Walter Shapero
United States Bankruptcy Judge
Date: Sep 26, 1989

On November 24, 1989, 118 B.R. 949, the Bankruptcy Judge issued an opinion denying Sharpe's assertion of the Fifth Amendment privilege against self-incrimination. The Bankruptcy Judge ruled that Sharpe must comply with the terms of his September 26, 1989 Order on or before December 15, 1989.

On November 28, 1989, the Bankruptcy Judge heard Sharpe's motion for an extension of time to file the final accounting. The Bankruptcy Court granted this motion and entered an Order giving Sharpe until January 19, 1990 to file the final accounting. The December 15, 1989 Order, which is the subject of this appeal, provides, *in toto,* as follows:

Former Trustee Sherman Sharpe, Jr., having filed a motion for extension of time for the filing of his final accounting, the parties being represented by counsel, the court having heard oral argument and being otherwise fully advised in the premises;

NOW THEREFORE IT IS HEREBY ORDERED that Former Trustee Sherman Sharpe, Jr., shall file his final accounting in the within matter on or before January 19, 1990;

IT IS FURTHER ORDERED that Former Trustee Sherman Sharpe, Jr., shall turn over all documents respecting his administration of the within estate, which were previously withheld by said trustee based upon his assertion of a Fifth Amendment privilege, on or before December 15, 1989.

/s/
Walter Shapero
United States Bankruptcy Judge
Dated: 12–12–89
Approved:
/s/
Marion J. Mack, Jr.
Assistant U.S. Trustee

This appeal followed. The Court notes that this December 15, 1989 Order, from which this appeal was taken, implicitly incorporates the terms of the September 26, 1989 Order, as far as the scope of the documents which Sharpe was ordered to turn over to the United States Trustee is concerned.

Meanwhile, the grand jury began investigating Sharpe's administration of the bankruptcy estate, apparently to determine whether Sharpe embezzled from the estate, in violation of 18 U.S.C. Section 153. On August 13, 1990, Sharpe was served with a subpoena from the grand jury, requesting that he appear on August 29, 1990 to testify before the grand jury and demanding that he bring with him certain enumerated bank checks and bank receipts "that pertain to financial transactions involving the bankruptcy estate of Jim's Garage, Inc." On August 30, 1990, Sharpe filed his Motion to Quash Grand Jury Subpoena, which is presently also before the Court. The Court notes that the checks and bank receipts demanded by the grand jury fall within the scope of the Bankruptcy Court's September 26, 1989 and December 15, 1989 Orders.

## DISCUSSION

### A. PRODUCTION OF DOCUMENTS

■ Sharpe argues, in both cases, that he cannot be compelled, consistent with his Fifth Amendment right against self-incrimination, to produce either the documents ordered by the Bankruptcy Court or the documents subpoenaed by the grand jury, contending that such compelled production of documents would amount to compelled testimony and would force him to concede the existence (or absence)[2] of the documents requested, to concede his possession and control over the requested documents, and to restate, repeat or affirm the truth of the documents' contents. In addition, that provision in the Bankruptcy Court's December 15, 1989 Order that requires Sharpe to file a final accounting would literally compel Sharpe to create evidence against himself.

In response, the United States Trustee, with respect to the bankruptcy appeal, and the United States Attorney, with respect to the grand jury subpoena, both argue that the Fifth Amendment does not shield an individual from producing records that he was required by law to maintain, citing

Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948); In re Grand Jury Subpoena Duces Tecum Served upon Underhill, 781 F.2d 64 (6th Cir.1986), cert. denied Underhill v. United States, 479 U.S. 813, 107 S.Ct. 64, 93 L.Ed.2d 23 (1986). This is, indeed, the grounds upon which the Bankruptcy Court below overruled Sharpe's claim of privilege.

In Underhill, the Sixth Circuit held that an individual can, notwithstanding the Fifth Amendment, be compelled to produce private records if the requested records fall within the "required records" exception to the Fifth Amendment. Id., at 67.

In order to meet this narrow exception, three requirements must be met. First, the purposes of the government's inquiry must be essentially regulatory, rather than criminal. Second, the records must contain the type of information that the regulated party would ordinarily keep. Third, the records "must have assumed 'public aspects' which render them at least analogous to public documents." Grosso v. United States, 390 U.S. 62, 67–68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968) (interpreting Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948)).

Id.

The court went on to apply this 3–part test to a grand jury subpoena requiring an independent automobile dealer to produce its odometer mileage statements in conjunction with the grand jury's investigation of odometer-tampering. The court concluded that the contents of the subpoenaed records fell within the "required records" exception, and, therefore, the Fifth Amendment did not prohibit their compelled production. Id., at 69–70.

This Court finds it unnecessary to resort to the 3–part test enunciated by the Underhill court because that case concerned only whether the "required records" exception to the Fifth Amendment applied to certain private records maintained by private citizens. In the instant case, in contrast, the records at issue were maintained, if at all,

2. 18 U.S.C. Section 153 makes it a crime to destroy certain documents.

by Sharpe in his official capacity as Chapter 7 trustee, an "officer of the court." 18 U.S.C. Section 153.

The "required records" exception was first developed by the Supreme Court in *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), another case relied upon by the Bankruptcy Court below. In *Wilson*, the Court was called upon to determine whether a corporation president could be compelled to produce certain of the corporation's "letter press copy books," which contained copies of the corporation's external correspondence. The grand jury sought to use the requested documents to investigate whether the president and other officers committed mail fraud on behalf of the corporation. The Supreme Court held that the corporate officers were not entitled to claim a privilege against self-incrimination and withhold the corporate documents because their custody of the documents came about solely because of their *official capacity* as officers of the corporation. *Wilson*, 221 U.S., at 386, 31 S.Ct. at 546. This is true even though the officers themselves were the target of the grand jury's criminal investigation. *Id.*, at 385, 31 S.Ct. at 546.

In reaching this conclusion, the Court analogized to the well-settled law that a public official has no Fifth Amendment right to withhold public records from grand jury review even if the records tend to incriminate the official in a specific crime:

> But the physical custody of incriminating documents does not of itself protect the custodian against their compulsory production. The question still remains with respect to the nature of the documents and the capacity in which they are held. It may yet appear that they are of a character which subjects them to the scrutiny demanded and that the custodian has voluntarily assumed a duty which overrides his claim of privilege. This was clearly implied in the *Boyd* [*v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) ] Case where the fact that the papers involved were the private papers of the claimant was constantly emphasized. *Thus, in the case of public records and official documents, made or kept in the administration of public office, the fact of actual possession or of lawful custody would not justify the officer in resisting inspecting, even though the record was made by himself and would supply the evidence of his criminal dereliction. If he has embezzled the public moneys and falsified the public accounts he cannot seal his official records and withhold them from the prosecuting authorities on a plea of constitutional privilege against self-incrimination.* The principle applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established. There the privilege, which exists as to private papers, cannot be maintained.

> There are abundant illustrations in the decisions. Thus in *Bradshaw v. Murphy*, 7 C. & P. 612, it was held that a vestry clerk who was called as a witness could not on the ground that it might incriminate himself object to the production of the vestry books kept under the statute, 58 George III, chapter 69, at 2. In *State v. Farnum*, 73 S.Car. 165 [53 S.E. 83], it appeared that a legislative committee had been appointed to investigate the affairs of the State Dispensary, and it was provided that it should have access to all books of the institution or of any officer or employe thereof. In anticipation the state dispenser removed certain books from the files, defending his action on the plea that they contained private matter which the committee had no right to inspect. The court ruled that it was the "obvious duty of any officer to keep books, letters and other documents relating to the business of his office and to the manner in which he has discharged or failed to discharge its duties in the place where the public business with which he is charged is conducted, subject to examination by any of the committees appointed by the General Assembly, and upon an application for mandamus to

compel him to perform this obvious public duty, it is essential for the court to ascertain the facts and inform itself whether there has been an actual removal of public documents or other public property and a refusal to restore them for examination." In *State v. Donovan,* 10 N.Dak. 203, [86 N.W. 709], the defendant was a druggist who was required by statute to keep a record of all sales of intoxicating liquors made by him, which should be subject to public inspection at reasonable times. It was held that the privilege against self-incrimination was not available to him with respect to the books kept under the law, for they were "public documents, which the defendant was required to keep, not for his private uses, but for the benefit of the public, and for public inspection." On similar grounds in *State v. Davis,* 108 Missouri, 666 [18 S.W. 894], the court sustained a statute requiring druggists to preserve the prescriptions they compounded and to produce them in court when required. *See also State v. Davis,* [68 W.Va. 142], 69 S.E.Rep. (W.Va.) 639; *People v. Coombs,* 158 N.Y. 532, [53 N.E. 527], *L. & N.R.R. Co. v. Commonwealth,* 51 S.W. Rep. (Ky.) 167; *State v. Smith,* 74 Iowa, 580 [38 N.W. 492]; *State v. Cummins,* 76 Iowa, 133 [40 N.W. 124]; *People v. Henwood,* 123 Michigan, 317 [82 N.W. 70]; *Langdon v. People,* 133 Illinois, 382 [24 N.E. 874].

The fundamental ground of decision in this class of cases, is that where, by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production

although their contents tend to criminate him. *In assuming their custody he has accepted the incident obligation to permit inspection.*

*Id.,* at 380–382, 31 S.Ct. at 544–545 (emphasis added).

In the instant case, Sharpe asserts, without any legal support or precedent, that all the records relating to his administration of the bankruptcy estate are "private." However, the Court finds that the position of Chapter 7 Trustee is a public office, well within the class of cases discussed above by the Supreme Court in *Wilson.* First, Sharpe was appointed by the Bankruptcy Court to that position and served in that capacity under the supervision of the Bankruptcy Court. Second, as mentioned above, the position of bankruptcy trustee is deemed by Congress to be an "officer of the court." 18 U.S.C. Section 153. Third, in voluntarily undertaking the position of trustee, Sharpe took on the explicit duties set out in Section 704 of the Bankruptcy Code, 11 U.S.C. Section 704, including the duty to maintain records, and the duty to make an accounting.[3] The Court therefore concludes that all of the records relating to Sharpe's administration of the bankruptcy estate are subject to compelled disclosure to both the United States Trustee and to the grand jury, notwithstanding the Fifth Amendment.

Because the Court has found that the records sought here come within the broad category of "public records" as discussed by the Supreme Court in *Wilson,* the Court need not address whether the records come within the "narrow exception" of "required records" kept by purely private parties, as discussed by the Sixth Circuit in *Underhill.*[4]

3. Section 704. Duties of trustee. The trustee shall—

    *   *   *   *   *   *

(2) be accountable for all property received;

    *   *   *   *   *   *

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

    *   *   *   *   *   *

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

11 U.S.C. Sections 704(2), (7), and (9).

4. The Court notes, for the record, that the instant case is different from *Butcher v. Bailey,* 753 F.2d 465 (6th Cir.1985), *cert. dismissed,* 473

■ One further issue was raised by the Assistant United States' Attorney's statements at oral argument. He stated that Sharpe's *act of producing the documents* requested by the grand jury and required by the Bankruptcy Court's December 15, 1989 Order cannot be used to incriminate him at a subsequent criminal prosecution, under *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). However, upon reviewing that case, the Court concludes that government's interpretation of that case is misplaced. First, that opinion concerned only whether a custodian of a private corporation's records can ever resist a subpoena of the corporation's records on the basis of his personal Fifth Amendment privilege against self-incrimination, i.e., because the substance of the requested documents tend to incriminate him personally. The Supreme Court answered this question in the negative. *Id.,* 108 S.Ct., at 2290. The Court went on to state, however, that the custodian's personal participation in the production process alone cannot be used to incriminate him: "Because the custodian acts as a representative, the act is deemed one of the corporation and not the individual." *Id.,* at 2295. *On the other hand:*

> The Government has the right, however, to use the corporation's act of production against the custodian. The Government may offer testimony—for example from the process server who delivered the subpoena and from the individual who received the records— establishing that the corporation produced the records subpoenaed. The jury may draw from the corporation's act of production the conclusion that the records in question are authentic corpo-

rate records, which the corporation possessed, and which it produced in response to the subpoena. *And if the defendant held a prominent position with the corporation that produced the books and records, the jury must, just as it would had someone else produced the documents, reasonably infer that he had possession of the documents or knowledge of their contents.*

*Id.* (emphasis added).

Thus, the government's use of the fact of production against the corporate custodian is not at all foreclosed; the only fact that cannot be brought to the criminal jury's attention is the fact that the defendant was the individual who, *as custodian,* participated in the document production. As revealed in the above quote, if the individual who is the corporation's records custodian also happens to be the president or other officer of the company, the government may urge the jury to infer that the individual participated in or controlled the document production *as an officer of the corporation.*

Moreover, the Court concludes that *Braswell* is inapplicable to the instant case in any event. *Braswell* was strictly limited to the production of documents by the custodian of a corporation or other "collective entity." *Id.,* at 2293. The Court explicitly left for another day whether the same analysis would apply when the corporation has but one employee and officer. *Id.,* at 2295 n. 11. *Braswell* is inapplicable here because Sharpe is not a "collective entity." Nor has Sharpe been asked to produce records as the "representative" of some other entity, notwithstanding the government's argument.

U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985), although neither party cited *Butcher* in their briefs. In *Butcher,* the bankruptcy court ordered the *debtor* (as opposed to the trustee) to produce his *personal,* prepetition records (including the type of financial records at issue here) to the Chapter 7 Trustee, over the debtor's Fifth Amendment objection. On appeal, the Sixth Circuit held that the debtor's act of producing the records under compulsion could violate his Fifth Amendment right against self-incrimination. *Id.,* at 470. In that case, however, no one argued that the debtor maintained the

records in any official capacity, or that the records were "public records" as discussed by the Supreme Court in *Wilson,* or even quasi-public records, or "required records," as discussed by the Sixth Circuit in *Underhill.*

*Butcher* is clearly distinguishable on these grounds. Unlike Sharpe in the instant case, the debtor in *Butcher* served in no public capacity and had no reason to suppose that his personal, prepetition financial records would be subject to public disclosure, or that he conducted his prepetition financial affairs for the public good, or as a "public official."

■ As set out above, the reason that Sharpe can be compelled, consistent with the Fifth Amendment, to produce the requested records is because Sharpe holds the records as a public official, the records are public records (not his private property), and Sharpe waived any Fifth Amendment rights he may have had to hide those records from public view when he voluntarily undertook the public duties and responsibilities of Chapter 7 Trustee. For precisely these reasons, the Sixth Circuit has expressly agreed with other circuits "that the act of production doctrine ... is not applicable to required records." *Underhill*, 781 F.2d, at 69.

## B. BANKRUPTCY COURT ORDER TO FILE A FINAL ACCOUNTING

■ The remaining issue is whether Sharpe can be compelled to submit a final accounting. Section 704(9) of the Bankruptcy Code clearly imposes this duty upon him. However, as Sharpe argues, those portions of the Bankruptcy Court's Orders that require him to submit a final accounting go much further than the order to produce documents. In fact, the Orders may compel Sharpe not only to disclose incriminating evidence against himself, but to create it in the first place.

However, the Sixth Circuit's analysis in the *Underhill* case leads this Court to conclude that, in voluntarily accepting the position of Chapter 7 trustee, Sharpe waived any Fifth Amendment privilege he might later claim when it came time to file his final accounting, as required by Section 704(9). "[I]f an individual chooses to begin or continue to do business in an area in which the government requires record keeping, he may be deemed to have waived any Fifth Amendment protection which would otherwise be present in the absence of the record keeping regulation." *Underhill*, 781 F.2d, at 70.

The court in *Underhill* explicitly recognized that the act of *producing* "required records" in response to a grand jury subpoena is both testimonial and incriminating, yet the court held that the petitioner could be *compelled* to produce the records nonetheless:

Petitioners next appear to contend simply that because the act of producing the instant odometer statements will be incriminating, *Doe [United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) ] must be applied to bar the grand jury's demand for production. The fatal flaw in petitioner's reasoning is that it overlooks the fundamental fact that the required records doctrine is an *exception* to the Fifth Amendment. *See, e.g., In re Grand Jury Subpoena to Custodian of Records, supra,* 497 F.2d [218] at 220 [ (6th Cir.1974) ]; *In re Doe, supra,* 711 F.2d [1187] at 1192 [ (2nd Cir.1983) ]. As such, the doctrine presupposes that compliance with the government's inquiry may be incriminating. Indeed, in *Shapiro*, petitioner was appealing from a criminal conviction. Nonetheless, the Supreme Court has directed that where the narrow parameters of the doctrine are met, and the balance weighs in favor of disclosure, the information must be forthcoming *even in the face of potential incrimination.* This is why *Doe* is not controlling, and why, we suspect, that the Court so carefully excluded required records from the reach of its holding. In our view, in order to have meaning the required records exception must apply to the act of production as well as the contents to which the doctrine applies.

*Underhill*, 781 F.2d, at 70 (emphasis in original).

To this Court, compelled testimony is compelled testimony, whether a court (or grand jury) compels the witness to vouch for the authenticity and his control over incriminating documents or to create an incriminating testimonial record in the first instance. The Court therefore finds no meaningful distinction between Judge Shapero's order requiring Sharpe to file his final accounting and his order requiring Sharpe to produce all documents relating to his administration of the bankruptcy estate. In both instances, Sharpe can be compelled to incriminate himself through testimony because, by accepting the posi-

tion of Chapter 7 trustee, with its incumbent public duties under Section 704(9) of the Bankruptcy Code, Sharpe has waived his future right not to incriminate himself by fulfilling those public duties.

The Court's reasoning in this regard is wholly consistent with Supreme Court precedent. In *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and its companion case, *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), the Supreme Court held that a taxpayer could not be compelled to file wagering tax returns, which were targeted specifically at persons who earn income through illegal gambling activities and were made available by the Internal Revenue Service to local law enforcement agencies. But, the Court distinguished these tax returns from the type of "required records" excepted from the Fifth Amendment:

> We think that neither *Shapiro* nor the cases upon which it relied are applicable here. Moreover, we find it unnecessary for present purposes to pursue in detail the question, left unanswered in *Shapiro*, of what "limits ... the government cannot constitutionally exceed in requiring the keeping of records ..." It is enough that there are significant points of difference between the situations here and in *Shapiro* which in this instance preclude, under any formulation, an appropriate application of the "required records" doctrine.
>
> Each of the three principal elements of the doctrine, as it is described in *Shapiro*, is absent from this situation, [sic] First, petitioner Marchetti was not, by the provisions now at issue, obliged to keep and preserve records "of the same kind as he has customarily kept"; he was required simply to provide information, unrelated to any records which he may have maintained, about his wagering activities. This requirement is not significantly different from a demand that he provide oral testimony. *Second, whatever "public aspects" there were to the records at issue in Shapiro, there are none to the information demanded from Marchetti. The Government's anxiety to obtain information from to a private individual does not without more render that information public; if it did, no room would remain for the application of the constitutional privilege.* Nor does it stamp information with a public character that the Government has formalized its demands in the attire of a statute; if this alone were sufficient, the constitutional privilege could be entirely abrogated by an Act of Congress. Third, the requirements at issue in *Shapiro* were imposed in "an essentially noncriminal and regulatory area of inquiry" while those here are directed at a "selective group inherently suspect of criminal activities."

*Marchetti*, 88 S.Ct., at 706–707 (emphasis added) (citations omitted).

Similarly, in *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), the Supreme Court invalidated a federal statutory scheme requiring that individual members of the Communist Party register their affiliation with that group, disclose their aliases, and list offices they held in the party. However, in this case, the government did not argue that the party members held public positions or that this information otherwise constituted public records.

However, in *California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971), the Supreme Court upheld a California statute which made it a crime to leave the scene of a traffic accident without giving one's name and address. In that case, the petitioner argued that this reporting requirement violated his Fifth Amendment right against self-incrimination. In that case, the plurality opinion made clear that reporting requirements not directed specifically at suspected criminal activity do not necessarily entail the same substantial risk of self-incrimination that the wagering tax forms entailed in *Marchetti* and *Grosso*, and therefore do not violate the Fifth Amendment:

> In contrast, Section 20002(a)(1), like income tax laws, is directed at all persons—here all persons who drive automobiles in California. This group, numbering as it does in the millions, is so

large as to render Section 20002(a)(1) a statute "directed at the public at large." It is difficult to consider this group as either "highly selective" or "inherently suspect of criminal activities." Driving an automobile, unlike gambling, is a lawful activity. Moreover, it is not a criminal offense under California law to be a driver "involved in an accident." An accident may be the fault of others; it may occur without any driver having been at fault. No empirical data are suggested in support of the conclusion that there is a relevant correlation between being a driver and criminal prosecution of drivers. So far as any available information instructs us, most accidents occur without creating criminal liability even if one or both of the drivers are guilty of negligence as a matter of tort law.

The disclosure of inherently illegal activity is inherently risky. Our decisions in *Albertson* and the cases following illustrate that truism. But disclosures with respect to automobile accidents simply do not entail the kind of substantial risk of self-incrimination involved in *Marchetti, Grosso,* and *Haynes* [*v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968)]. Furthermore, the statutory purpose is noncriminal and self-reporting is indispensable to its fulfillment.

*Id.*, 91 S.Ct., at 1539 (citations omitted).[5]

Similarly, the statute at issue in the instant case, 11 U.S.C. Section 704(9), requires all bankruptcy trustees to file a final accounting. The purposes of this statute are clearly regulatory; the statute intends to provide for a record of the trustees' receipts and expenditures. Further, Section 704(9) is addressed to all trustees, not just those who mishandle their responsibilities. Accordingly, under *Byers*, there is nothing inherently unconstitutional about the Section 704(9).

In the instant case, however, the Bankruptcy Court below specifically ordered Sharpe to file a final accounting, *after* the United States Trustee made an issue of Sharpe's alleged criminal activities. Notwithstanding the general application of the statute, then, Sharpe could argue that the Bankruptcy Court's order below specifically targeted suspected criminal conduct.

However, the defendant in *Byers* was in fact prosecuted for his failure to make the required disclosure, and, thus, he too was singled out. The Court can see no legal distinction between the action of the Bankruptcy Court below, which merely ordered Sharpe to comply with his statutory duty, under Section 704(9), to file a final accounting, and the state's prosecution of Byers for his failure to abide by his statutory duty to remain at the accident scene and divulge his name and address. If Sharpe refuses to obey the Bankruptcy Court's Order, the ultimate result may be his prosecution on contempt charges, the same kind of result approved by the Supreme Court in *Byers*.

The Court concludes that the Bankruptcy Court's order requiring Sharpe to file his final accounting did not violate Sharpe's Fifth Amendment right against self-incrimination.

Finally, Sharpe argued during oral argument that his resignation as Trustee effectively relieved him of any duty he may have had previously, under Section 704(9), to file a final accounting, and that, therefore, any official capacity in which he may have been acting ended at that time. From this infirm position, Sharpe argues that,

5. A number of more recent decisions have upheld the validity of reporting statutes that have both a regulatory and a prosecutorial function, that is, both a function to regulate conduct and to expose criminal activity. *See, e.g. Whiteside and Co. v. S.E.C.*, 883 F.2d 7 (5th Cir.1989) (notice of net capital deficiency for securities brokers); *United States v. Flores*, 753 F.2d 1499 (9th Cir.1985) (notice to common carriers of firearms shipment); *United States v. Des Jardins*, 747 F.2d 499 (9th Cir.1984) (currency reporting statute); *United States v. Wilson*, 721 F.2d 967 (4th Cir.1983) (firearms shipment);

*United States v. Grotke*, 702 F.2d 49 (2d Cir. 1983) (currency reporting); *United States v. Dichne*, 612 F.2d 632 (2d Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980) (same); *Whiteside & Co. v. S.E.C.*, 557 F.2d 1118, 1121 n. 3 (5th Cir.1977) (notice of broker's failure to make reserve deposit); *Sloan v. S.E.C.*, 547 F.2d 152 (2d Cir.1976) (Securities Exchange Act of 1934, Sec. 15(b)); *United States v. Vaught*, 434 F.2d 124 (9th Cir.1970) (importation of amphetamines); *Wynn v. United States*, 422 F.2d 1245 (9th Cir.1970) (importation of marijuana).

through the simple expedient of tendering his resignation, he could take back his voluntary waiver of his Fifth Amendment privilege with respect to his duty to file a final accounting.

This argument presupposes a Procrustean construction of Section 704(9) that the Court cannot accept. Sharpe's construction of the statute implies that Congress intended to allow bankruptcy trustees to walk away from their duties and responsibilities, without accounting for what they did and leaving behind for their successor trustees a hopelessly befouled estate. The Court thinks this a result Congress could not have intended. Instead, the Court construes Section 704(9) to mean that any person who undertakes the duties of trustee—no matter how short the duration of his tenure—must file an accounting respecting what he did with that office.

The Court consequently finds that, by voluntarily taking on the duties and responsibilities of trustee, Sharpe once and for all waived his Fifth Amendment privilege with respect to his actions and responsibilities as trustee.

### CONCLUSION

The Court, as a concluding matter, agrees with the United States Trustee that Sharpe's proposed construction of the Fifth Amendment would seriously undermine the proper administration of bankruptcy estates. If Sharpe's interpretation were accepted, bankruptcy trustees would henceforth be licensed not only to abscond with the assets of the bankruptcy estates entrusted to their care, but also with any records and evidence of their misconduct. Subsequent administration and closing of such looted estates would be virtually impossible. Fifth Amendment privileges as discussed herein are not absolute, but must be balanced against, and must yield to, in the respects provided for herein, the strong societal interests inherent in the proper administration of bankruptcy estates.

The Court also recognizes the possible broader ramifications of its opinion today. If other courts find that similar fiduciaries, such as union officials and pension plan trustees, among other public officials, waive certain of their Fifth Amendment privileges upon entering into their public or official duties, it is the Court's view that the ends of justice will be served in the long run for the many individuals who entrust such officials with their assets and savings.

### ORDER

For all of the reasons set forth herein, and the Court being otherwise fully advised in the premises;

NOW THEREFORE;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Motion to Quash Grand Jury Subpoena filed by Sherman Sharpe, Jr., is DENIED; and

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Bankruptcy Court's December 15, 1989 Order is AFFIRMED.

LET APPROPRIATE JUDGMENTS BE ENTERED ACCORDINGLY.