Penney v. Middleton                    CV-92-555-B    11/21/94 P
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


Richard Penney, et al.


     v.                                Civ. No. 92-555-B

Town of Middleton, et al.



                         **O R D E R**

     Richard and Laura Penney and their children, Robert, Jason
and Suzanne, seek compensatory and punitive damages from the Town
of Middleton, its local school district, various local officials,
and a non-profit corporation.  The Penneys contend that they
suffered from unlawful discrimination because they moved to
Middleton from Massachusetts, and unlawful retaliation because of
things Richard and Laura did and said.  Richard Penney also
claims that he was the victim of unlawful discrimination because
of a visual disability.  The Penneys base their claims on the
constitutional rights to free speech, travel and equal
protection; § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A.
§ 794; an agreement reached between the town and the United
States Department of Housing and Urban Development; and various
state law rights.  Defendants have moved to dismiss parts of the

complaint for failure to state a claim.  They also invoke the affirmative defenses of immunity, bankruptcy discharge, accord and satisfaction, collateral estoppel, and res judicata.  Before I address the merits of this motion, I outline the case's convoluted procedural history, the standard of review I use in deciding the motion, and the complaint's allegations.


## I.  BACKGROUND

### A.  Procedural History

The Penneys filed their first federal court complaint in this matter on October 30, 1992.  They named forty-five defendants including the town of Middleton, and various officers and agents of the town, and of neighboring towns.  The complaint contained twenty-three federal claims and ten pendent state law claims alleging a legion of civil rights violations and common law torts.  Within a few months, the Penneys amended their complaint, making only minor changes.

In February 1993, the defendants moved for a more definite statement and several defendants moved to dismiss the claims against them.  Following a status conference in April 1993, the parties submitted a proposed case management order, and the resulting order set guidelines for the progress of the case and

provided for the appointment of "lead defendants' counsel" to act as spokesperson for the defendants. After the next status conference, I ordered the Penneys to prepare a second amended complaint identifying the defendants that were allegedly liable for each cause of action and the facts on which each cause of action was based. I also directed the parties to confer about the plaintiffs' claims and the defendants' expected defenses in order to clarify and narrow the genuine factual and legal issues.

The Penneys' second amended complaint, filed in June 1993, reduced the number of defendants to thirty-three, and reorganized their claims into thirty-six counts. At the end of August, lead defendants' counsel moved to dismiss the complaint on procedural grounds. On November 29, 1993, I held hearing on the defendants' motion to dismiss. At that time, I expressed my discouragement with the quality of the second amended complaint. Following the hearing, I issued an order limiting motions and instructing the Penneys to file a third amended complaint that would set out their claims with greater precision. The Penneys filed the present amended complaint on May 11, 1994, and the defendants filed a timely motion to dismiss.

**B.    Standard of Review**

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court must take all well-pleaded facts in the complaint as true and draw reasonable inferences in favor of the plaintiff. Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992). Well-pleaded facts, however, do not include the plaintiffs' "unsupported conclusions or interpretations of law." Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). Thus, a district court need not accept subjective characterizations, bald assertions, or conclusory descriptions. See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52-53 (1st Cir. 1990). Although the "the line between 'facts' and 'conclusions' is often blurred," it must be drawn, because

> [i]t is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability that "conclusions" become "facts" for pleading purposes.

Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

Under the general pleading requirements of Fed. R. Civ. P. 8(a)(2), the Penneys need only aver "a short and plain statement

of the claim showing that the pleader is entitled to relief."
Allegations of civil rights violations pursuant to 42 U.S.C.A. §
1983 need not meet a heightened pleading standard. Leatherman v.
Tarrant County Narcotics Unit, 113 S. Ct. 1160, 1163 (1993)
(holding that Fed. R. Civ. P. 8(a)(2) applies to allegations
against municipalities in § 1983 actions and prevents a
heightened pleading standard).[1]  Even the minimal requirements of
notice pleading, however, require the Penneys to plead sufficient
facts in each count so that "each general allegation [is]
supported by a specific factual basis." Fleming v. Lind-Waldock
& Co., 922 F.2d 20, 23 (1st Cir. 1990).  With this standard of
review in mind, I assume the truth of the complaint's allegations
and summarize them in the light most favorable to the Penneys.

C.    **Factual Background**

Richard Penney has a less than total visual impairment that
causes him to be classified under state law as "legally blind."
As a result, he is entitled to a partial real estate tax

_____

[1]  The breadth of the holding in Leatherman and its effect
on the existing case law requiring pleading particularity in §
1983 actions is currently unsettled in this circuit as well as
others. See, e.g., Schultea v. Wood, 27 F.3d 1112, 1115 n.2 (5th
Cir. 1994); Feliciano v. Dubois, 846 F. Supp. 1033, 1042 (D.
Mass. 1994); Hall v. Dworkin, 829 F. Supp. 1403, 1409 (N.D.N.Y.
1993).

5

exemption.  See N.H. Rev. Stat. Ann. § 72:37 (Supp. 1993).

The Penney family moved to Middleton, New Hampshire, from Massachusetts in 1981.  Since then, Richard and Laura Penney have filed a series of petitions, administrative complaints, and legal actions:  invoking their right to a real estate tax exemption; challenging the town's administration of a federally funded community development block grant program; alleging discrimination and retaliation because of a handicap; and contesting an improper meeting of the Middleton School District.

In 1984, Richard Penney complained to acting chief of police Roy Snyder that his son, Robert, was assaulted with a BB gun and threatened with a rifle by boys in town.  Roy Snyder failed to properly investigate the incidents and did not commence a prosecution of the boys involved.  Between 1986 and 1992, Snyder, acting in his official capacity as Middleton School District bus driver and coordinator:  participated in the school district's decisions suspending Robert and Jason Penney; subjected Suzanne and Robert Penney to verbal abuse; and showed reckless disregard and deliberate indifference to the children's safety. Star Snyder, as a member of the school board for the Middleton School District, either disregarded or tacitly authorized Roy Snyder's actions.

Jeremy Johnson, in his capacity as police chief, twice revoked Richard Penney's concealed weapon permit. In 1990, Johnson frequently drove back and forth past the Penneys' house intending to harass and intimidate them.

In May 1991, the Middleton Concerned Citizen Group, Inc. ("MCCG"), with Calvin Roach and Roy Snyder as officers, sued the town and two selectmen, and later sought to amend the complaint to add Richard Penney as a defendant. Richard Penney intervened in the suit to protect his interests. In October 1991, Roy Snyder made public statements that Richard Penney conspired with a town selectman to receive town funds illegally. The suit was dismissed in January 1992. At various times, the Middleton School District has refused to comply with Richard Penney's requests under New Hampshire's right-to-know law.

### III. <u>DISCUSSION</u>

Apparently believing that quantity is more important than quality, defendants support their motion with nearly 20 separate arguments. I analyze their motion by first examining the sufficiency of the Penneys' claims. I then address defendants' immunity defenses and their contention that a prior bankruptcy

filing bars claims against Chief Johnson.  Finally, I discuss defendants' attempted reliance on the affirmative defenses of accord and satisfaction, collateral estoppel and res judicata.

A.    **First Amendment Claims**

The Penney children contend in Count I that the Middleton School District and both Roy and Star Snyder are liable pursuant to 42 U.S.C.A. § 1983 and the First Amendment because the defendants retaliated against the children for things their parents did and said.  The children make a similar claim against Chief Johnson in Count VIII.  However, a § 1983 claim cannot be predicated on a violation of another person's protected rights. Dohaish v. Tooley, 670 F.2d 934, 936-37 (10th Cir.), cert. denied, 459 U.S. 826 (1982); Casanas v. De Leon, 633 F. Supp. 22, 23-24 (D.P.R. 1986); but see Dangler v. Yorktown Cent. Schools, 771 F. Supp. 625, 630-31 (S.D.N.Y. 1991).  Since the children do not contend that their own First Amendment rights were chilled by the conduct described in Count I, their First Amendment claims must be dismissed.

Richard and Laura Penney allege in Count VIII that Chief Johnson violated their First Amendment rights by repeatedly driving slowly in front of their home in retaliation for things the Penneys did and said.  However, the Penneys have not alleged

8

that their right to speak out was in fact chilled by Johnson's conduct and no such claim could credibly be made based upon the facts alleged in the complaint. Accordingly, this claim must also be dismissed. Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989) ("[w]here a chilling effect is speculative, indirect or too remote, finding an abridgment of First Amendment rights is unfounded").

B.   **Right to Travel and Equal Protection**

The Penney children base their right to travel and equal protection claims in Count I on the contention that they were mistreated by the school bus driver and chief of police. Richard Penney contends in Count VII that Chief Johnson violated his rights to travel and equal protection by twice revoking Penney's pistol permit. The Penney family all allege in Count VIII that Chief Johnson violated their rights to travel and to equal protection by driving slowly past their house to intimidate and harass them.

Regardless of its source, the essence of the Penneys' right to travel claims is their contention that they were treated differently from other residents because they had moved to Middleton from Massachusetts. See, e.g., Attorney Gen. of New

9

York v. Soto Lopez, 476 U.S. 898, 901-05 (1986) (noting relationship between right to free migration claim and equal protection claim based upon right to travel); Bray v. Alexandria Women's Health Clinic, 113 S. Ct. 753, 763 (1993) (quoting Zobel v. Williams, 457 U.S. 55, 60 n.6 (1982) (explaining the right to interstate travel protects against being discriminated against by "'the erection of actual barriers to interstate movement' and 'being treated differently from intrastate travelers'"). Any such claim must allege that the defendants purposely discriminated against the plaintiffs because they had traveled from one state to another. See Lipsett v. University of Puerto Rico, 864 F.2d 881, 896 (1st Cir. 1988) (unlawful discrimination claim must allege facts showing discriminatory intent or purpose).

The Penneys have not alleged that defendants purposely discriminated against them because they came from another state. Instead, they merely assert that defendants violated their rights to travel and equal protection. This type of conclusory pleading is insufficient even under Fed. R. Civ. P. 8's liberal pleading standard.

C.   **Rehabilitation Act Claims**

Richard Penney alleges in Count VII that Chief Johnson

10

violated § 504, by unjustly revoking his pistol permit solely because of his disability.  All of the Penneys allege in Count IV that the defendants violated plaintiffs' rights under 24 C.F.R. § 8.56(k), a Department of Housing and Urban Development ("HUD") regulation prohibiting retaliation against persons who participate in a HUD investigation of a § 504 claim.  The Penneys base their claims both on an implied right of action pursuant to § 504 and a right to damages for violations of § 504 pursuant to § 1983.

Defendants apparently concede that a properly pleaded complaint can state an implied cause of action pursuant to § 504 for both a violation of the statute itself and its implementing regulations.[2]  Instead, they argue that: (1) the children's implied right of action claim in Count IV cannot survive because

_____

[2]The First Circuit has recognized an implied right of action for violations of § 504 itself.  See Cook v. Rhode Island, 10 F.3d 17 (1st Cir. 1993).  Moreover, other courts have recognized that an implied right of action also exists in certain instances to enforce a statute's implementing regulations.  See, e.g., Smith v. Dearborn Fin. Servs., Inc., 982 F.2d 976, 979 (6th Cir. 1993) (private right of action exists to enforce regulation if the right to enforce the regulation is implied by the authorizing statute); Hoyt v. St. Mary's Rehabilitation Center, 711 F.2d 864, 867 (8th Cir. 1983) (retaliation claim in violation of Department of Health and Human Services regulations is actionable under § 504); Dopico v. Goldschmidt, 687 F.2d 644, 650-51 n. 5 (2d Cir. 1982) (recognizing right of action for implementing regulations based on implied right of action under § 504).

11

the regulation they rely on protects only people who participate in some way in a HUD investigation; (2) neither Count IV nor Count VII states a claim for relief under § 1983; (3) neither the town nor the school district can be held liable for a § 1983 violation on a respondeat superior theory (4) Star Snyder cannot be held liable on a respondeat superior theory; and (5) the Middleton Concerned Citizen Group, Inc. cannot be liable for a § 504 violation because it did not engage in "state action."  I address each argument in turn.

### 1. The Children's § 504 Claim

The regulation the Penneys rely on in Count IV provides in pertinent part:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any person for the purpose of interfering with any right or privilege secured by this part, or because he or she has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.

24 C.F.R. § 8.56(k) (1994).  Defendants contend that the children cannot base a claim on this regulation because they do not allege that they complained, testified, assisted, or participated in a HUD investigation conducted pursuant to § 504.  I reject this contention because the complaint plainly alleges that the defendants violated the regulation by "intimidating and

12

discriminating against the Penney children for their parents' making complaints to HUD, and for the <u>Penneys'</u> assistance and participation in investigation of their complaints."  (Emphasis added).

### 2.  <u>§ 504 Claims and § 1983</u>

The United States Supreme Court has determined that a federal statute may be privately enforced in a § 1983 claim unless either "the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983" or "Congress has foreclosed such enforcement of the statute in the enactment itself."  <u>Suter v. Artist M</u>, 112 S.Ct. 1360, 1366 (1992) quoting <u>Wright v. Roanoke Development and Housing Authority</u>, 479 U.S. 418, 423 (1987).  A statute will not be deemed to have foreclosed a § 1983 enforcement action "unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to preclude such private enforcement."  <u>Wright</u> at 424.  Finally, the court has held that a state actor can establish that Congress intended to foreclose a § 1983 enforcement action by demonstrating that the statute's own enforcement mechanism is comprehensive.  <u>Middlesex Cty. Sewerage Auth. v. National Sea Clammers Ass'n</u>, 453 U.S. 1, 21 (1981).

13

Defendants contend that § 504's own implied private right of action qualifies as a comprehensive remedial scheme that precludes the Penneys from also basing their § 504 claims on § 1983. All but two courts that have considered whether a plaintiff may bring a § 504 claim pursuant to § 1983 have come to a different conclusion. See Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1382 (10th Cir. 1981); Pendleton v. Jefferson Local Sch. Dist., 1992 U.S. App. LEXIS 6294 *21 (6th Cir. 1992); Madsen v. Boise State Univ., 976 F.2d 1219, 1225-26 (9th Cir. 1992) (Norris, J., dissenting); Independent Housing Servs. v. Fillmore Ctr. Assoc., 840 F. Supp. 1328, 1345 (N.D. Cal. 1993); Harris v. Board of Educ., 798 F. Supp. 1331, 1334 (S.D. Ohio 1992); Rothschild v. Grottenthaler, 716 F. Supp. 796, 801 (S.D.N.Y. 1989); Cordero-Martinez v. Aponte-Roque, 685 F. Supp. 314, 316 (D. P.R. 1988); Conlon v. City of Long Beach, 676 F. Supp. 1289, 1298 (E.D.N.Y. 1987); Meyerson v. Arizona, 526 F. Supp. 129 (D.Ariz. 1981), aff'd on other grounds, 709 F.2d 1235 (9th Cir. 1983), vacated and remanded, 465 U.S. 1095 (1984); Medley v. Ginsberg, 492 F. Supp. 1294 (S.D. W.Va. 1980); but see Ruth Anne M. v. Alvin Indep. School Dist., 532 F. Supp. 460, 476 (S.D. Texas 1982); Tyus v. Ohio Dep't of Youth Services, 606 F. Supp. 239 (S.D. Ohio 1985). The Supreme Court's decision in

14

<u>Franklin v. Gwinnett County Pub. Schools</u>, 112 S. Ct. 1028 (1992) does not cause me to question the wisdom of these decisions.

      3.  <u>The town and the school district - municipal liability</u>

The Penneys allege in Count IV that the school district and the town are liable for Roy Snyder's violations of § 504. Richard Penney alleges in Count VII that the town is liable for Chief Johnson's § 504 violations. To the extent that these claims are based on an implied private right of action under § 504, plaintiffs are entitled to maintain claims against the school district and the town on a respondeat superior theory. <u>Bonner v. Lewis</u>, 857 F. Supp. 559, 566 (9th Cir. 1988); <u>Glanz v. Vernick</u>, 756 F. Supp. 632, 636 (D. Mass. 1991); <u>Patton v. Dumpson</u>, 498 F. Supp. 933, 942 (S.D.N.Y. 1980).

To the extent the parties base their claims on § 1983, however, the claims are subject to the same pleading requirements as any other § 1983 claim. Neither the town nor the school district may be liable for a § 1983 violation on a respondeat superior theory. <u>Monnell v. Department of Soc. Servs.</u>, 436 U.S. 658, 694 (1978). Instead, a § 1983 claim against a municipality or a municipal subdivision, such as the school district, must allege that: (1) a municipal policymaker intentionally adopted a

15

policy, implemented a training protocol or allowed a custom to develop; (2) the challenged policy, training protocol or custom caused a violation of federally protected rights; and (3) the policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the policy, training, protocol or custom. Canton v. Harris, 489 U.S. 378, 385 (1989); Manarite v. City of Springfield, 957 F.2d 953, 958 (1st Cir. 1991), cert. denied, 113 S. Ct. 113 (1992). Whether a municipal employee's adoption of a policy or acquiescence in a custom will be attributable to the municipality depends upon whether state law authorizes the employee to "speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." Jett v. Dallas Independent School Dist., 491 U.S. 701, 738 (1989); see also Gonzalez v. Ysleta Indep. Sch. Dist., 996 F.2d 745, 759 (5th Cir. 1993). Unless such a policymaker either implements the challenged policy or allows an established custom to be implemented, the municipality will not be liable for a § 1983 violation. Jett, 491 U.S. at 738. Since the Penneys have not alleged that any of defendants' § 504 violations were the result of an official policy, training

16

protocol or custom, their § 1983 claims against the school district and the town in Counts IV and VII cannot succeed.

Richard Penney's claim against the town in Count VII survives, however, because the complaint alleges that the town's police chief violated Penny's § 504 rights by revoking his pistol permit.  The chief plainly acts as a municipal policymaker when he decides on the criteria to be considered in granting or denying a request for a gun permit.  See N.H. Rev. Stat. Ann. 159:6, 6(b) (Supp. 1993).

> 4.  Star Snyder - Supervisory Liability

The Penneys' allegations in Count IV against Star Snyder also fail to state a § 1983 claim.  A plaintiff suing a supervisor under § 1983 must allege that (1) a subordinate violated her constitutional rights; (2) the supervisor's acts or omissions caused the subordinate's unconstitutional conduct; and (3) the supervisor was deliberately indifferent to the constitutional rights of others in acting or failing to act. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994); Manarite, 957 F.2d at 955-56.  The First Circuit has determined that deliberate indifference requires "actual knowledge [or willful blindness] of impending harm, easily preventable."  Manarite, 957 F.2d at 956 (quoting DesRosiers v.

17

Moran, 949 F.2d 15, 19 (1st Cir. 1991)). Although the Penney children alleged in Count I that Star Snyder "showed reckless disregard and deliberate indifference to Roy Snyder's deprivations" of their First Amendment rights, right to travel and right to equal protection, the Penneys failed to include similar allegations as to their rights under § 504 in Count IV. Consequently, the Penneys' § 1983 claims against Star Snyder in Count IV are dismissed.

5.    The Middleton Concerned Citizens Group, Inc.

The Middleton Concerned Citizens Group, Inc. ("MCCG") is a New Hampshire non-profit corporation. Roy Snyder and Calvin Roach are officers of the corporation. Richard Penney alleges in Count IV that MCCG violated § 504 and 24 C.F.R. 8.56(k) by causing a lawsuit to be filed against him for complaints he made to HUD. He makes this claim both directly under § 504 and under § 1983.

In order to maintain a § 1983 claim, a claimant must allege state action by the defendant. Rodriques v. Furtado, 950 F.2d 805, 813 (1st Cir. 1991); Rodriguez-Garcia v. Davila, 904 F.2d 90, 95 (1st Cir. 1990). In cases where a private party is charged with a § 1983 violation, the claimant must allege that either (1) the financial or regulatory relationship between the

18

state and the private actor is sufficiently strong that the private entity's actions are deemed to be the actions of the state; (2) the private actor allegedly exercised an exclusively public function; or (3) a symbiotic relationship existed between the state and the private actor. Rodriquez-Garcia, 904 F.2d at 96-97. Although this inquiry is necessarily fact specific, a § 1983 claim cannot survive if it does not allege facts that would satisfy the state action requirement.

Here, Penney does not claim the MCCG engaged in state action. Accordingly, his § 1983 claim against MCCG is dismissed. However, the state action requirement does not apply to an implied right of action under § 504. Thus, I reject defendants' challenge to this claim.

D.    **Voluntary Compliance Agreement**

Richard Penney alleges in Count V that Snyder and the town are liable under § 1983 because they violated a "Voluntary Compliance Agreement" entered between HUD and the town that allegedly prohibited the town from retaliating against the Penneys. A claim under § 1983 must be based upon a claimed violation of "rights, privileges or immunities secured by the constitution and laws" of the United States. 42 U.S.C.A. § 1983. A claim that certain defendants violated the terms of an

19

agreement between HUD and the town does not fulfill this requirement.  Accordingly, Count V is dismissed.

### E.    State Constitutional Claim

The Penney children claim a right to damages in Count I based on a violation of the New Hampshire Constitution's equal protection clause, N.H. Const., Pt. 1, Art. 14.  The law in this circuit is that a plaintiff who chooses the federal forum cannot expect a federal court to break new ground in recognizing rights under state law that have not yet been identified by the state's own courts.  DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 916 (1st Cir. 1992).  Since the New Hampshire Supreme Court has so far declined to recognize an implied right to damages for violations of the Pt. 1, Article 14 of the state's constitution, Rockhouse Mountain Property Owners Ass'n v. Town of Conway, 127 N.H. 593, 597-602 (1986), I grant defendants' motion to dismiss this claim.

### F.    Defamation Claim

Richard Penney asserts a defamation claim in Count IX that he did not include in any of the prior complaints.  I did not give him permission to file this new claim and, because he has already amended the complaint several times, he must first move to amend the complaint before I will determine whether to allow

20

his new claim.  Fed. R. Civ. P. 15.  Accordingly, Count IX is dismissed without prejudice.  Plaintiff may seek to add this count to the amended complaint by filing a motion to amend within 10 days.

### G.  Punitive Damages

The parties agree that punitive damages are not available against the town or the school district for the Penneys' § 1983 claims.  See Smith v. Wade, 461 U.S. 30, 55-56 (1983); City of Newkirk v. Fact Concerts, 453 U.S. 247, 271 (1981).  The defendants also contend, however, that punitive damages are not available in § 504 actions.  The Supreme Court's recent decision in Franklin v. Gwinnett County Public Schools, held that a broad spectrum of damages are available in Title IX cases, which are closely analogous to § 504 cases.  Franklin, 112 S. Ct. at 1035-38.  Although the Court did not specifically address punitive damages, it relied on a well-established general presumption for determining the availability of remedies:

> The general rule, therefore is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute.

Franklin, 112 S. Ct. at 1035.  The First Circuit has recently interpreted the presumption of a full remedy, described in

21

Franklin to allow for exemplary damages for violations of the implied right of action prohibiting retaliatory discharges under the Occupational Safety and Health Act of 1970. Reich v. Cambridgeport Air Systems, Inc., 26 F.3d 1187, 1194 (1st Cir. 1994). Other courts that have concluded that punitive damages are unavailable in § 504 actions have not considered the Franklin decision. See, e.g., United States v. Forest Dale, Inc., 818 F. Supp. 954, 970 (N.D. Tex. 1993); Glanz v. Vernick, 750 F. Supp. 39, 45 (D.Mass. 1990); Gelman v. Department of Educ., 544 F. Supp. 651, 654 (D.Colo. 1982). Given the unsettled state of the law concerning an appropriate remedy in § 504 actions, I decline to dismiss the Penneys' § 504 claims for punitive damages. If necessary, I will resolve the issue prior to trial.

**H.    Claims Against Johnson - Effect of a Bankruptcy Filing**

Johnson moves to dismiss the Penneys' claims against him on the grounds that these claims were discharged by his 1993 bankruptcy. See 11 U.S.C. § 542(a). If the Penneys' claims against Johnson have been discharged, he has nothing to fear from this lawsuit. The plaintiffs will not be able to recover from him personally and if his insurers refuse to defend the action in his name, he could default without fear of the consequences. However, a bankruptcy discharge does not prevent the Penneys from

22

naming Johnson in this lawsuit in an effort to recover from Johnson's insurers. In Re Edgeworth, 993 F.2d 51, 54 (5th Cir. 1993); In Re Shondel, 950 F.2d 1301, 1307 (7th Cir. 1991); In Re Jet Florida Systems, Inc., 883 F.2d 970, 976 (11th Cir. 1989). Accordingly, defendant's motion to dismiss on this basis is denied.

I. **Federal Claims Against Roy Snyder: Absolute Immunity**

To the extent that the Penney children's § 1983 claims in Count IV against Roy Snyder depend on his alleged failure to prosecute certain crimes committed against Robert Penney, Snyder is absolutely immune from liability under federal law for any decision he made not to prosecute someone. Harrington v. Almy, 977 F.2d 37, 40 (1st Cir. 1992). Accordingly, this allegation cannot be used to support Count IV.

Snyder also claims that he is absolutely immune from liability for the children's § 1983 claims based on the school bus suspensions because he was acting as a prosecutor or a judge when he allegedly committed these acts. The Supreme Court has adopted a functional approach to the analysis of immunity claims. Butz v. Economou, 438 U.S. 478, 512-14 (1977). Thus, a person in Snyder's position may be entitled to absolute immunity for acts taken in his capacity as a school bus driver if he was acting at

23

the time in a role functionally comparable to that of a prosecutor or a judge.  See id.; see also Bettencourt v. Board of Registration in Medicine, 904 F.2d 772, 782-83 (1st Cir. 1990). I cannot conclude from the complaint whether Snyder undertook the acts the Penneys describe in a prosecutorial or judicial capacity.  Accordingly, I deny defendants' motion to dismiss on this basis without prejudice to their right to present the issue again in a properly supported motion for summary judgment.

J.     **Federal Claims against Chief Johnson:
       Qualified Immunity**

Richard Penney alleges in Count IV that Chief Johnson revoked his gun permit in retaliation for complaints Penney made to HUD.  Johnson contends that his alleged conduct is protected by the doctrine of qualified immunity.  The essence of his argument is that clearly established law did not prohibit him from engaging in the conduct described in the complaint and his motives for undertaking the conduct cannot be considered in determining whether he is entitled to qualified immunity. Johnson's argument fails because it has been expressly rejected by the First Circuit Court of Appeals on more than one occasion. This issue was most recently raised in Broderick v. Roache, 996 F.2d 1294, 1298 (1st Cir. 1993).  There, plaintiff claimed that

24

the defendant had retaliated against him because he had exercised his First Amendment rights. The defendant claimed that he was entitled to qualified immunity even if he intended to retaliate against the plaintiff because his acts were lawful. In rejecting this argument, the court stated: "The short answer to [the defendant's] contention is that, in a recent decision not cited by any of the parties, we rejected this very argument. See Feliciano-Angulo v. Rivera-Cruz, 858 F.2d 40, 45-47 (1st Cir. 1988)." Broderick, 996 F.2d at 1298.

If, as Penney alleges, Chief Johnson purposely retaliated against him because he had complained to HUD, Johnson may not claim qualified immunity for his acts simply because the acts might have been lawful if his motives had been pure. The motion to dismiss on this basis is denied.

K.  **Defendants' Remaining Arguments**

Defendants invoke the affirmative defenses of accord and satisfaction, collateral estoppel, and res judicata in support of their motion to dismiss. I decline to address the merits of these arguments because they would require me to look well beyond the pleadings. See Fed. R. Civ. P. 12(b)(6); Maruho Co., Ltd. v. Miles, Inc., 13 F.3d 6, 8 (1st Cir. 1993). Thus, defendants' motion to dismiss on this basis is denied without prejudice to

25

their right to renew their arguments in a properly supported motion for summary judgment.

### III. <u>CONCLUSION</u>

I enter the following order with respect to defendants' motion to dismiss (document #143):

1.  Count I is dismissed.

2.  Plaintiffs' claims in Count IV against the town, the school district, Star Snyder, and MCCG pursuant to 42 U.S.C.A. § 1983 are dismissed.

3.  Count V is dismissed.

4.  Richard Penney's right to travel and equal protection claims in Count VII are dismissed.

5.  Count VIII is dismissed.

6.  Count IX is dismissed without prejudice.

In all other respects, defendants' motion to dismiss is denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

November 21, 1994
cc:  Sheldon M. Katz, Esq.
     Cynthia A. Satter, Esq.
     Timothy Bates, Esq.

26

Edward D. Philpot, Esq.
Edward B. Mulligan, IV, Esq.
Calvin Roach
Gordon R. Blakeney, Jr.