In re John M. DOUGHTY, Debtor.

John M. DOUGHTY, Plaintiff,

v.

Lisa HOLT and Mark Holt, Defendants.

Bankruptcy No. 95–10654.
Adv. No. 96–1014.

United States Bankruptcy Court,
D. Maine.

April 23, 1996.

**2**

Todd S. Holbrook, Portland, MD.

Timothy H. Norton, Portland, MD.

Anthony E. Perkins, Portland, MD.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

In this action John M. Doughty, a discharged Chapter 7 debtor, seeks an order enforcing § 524's discharge injunction to halt continuation of a state court tort suit that was instituted by Lisa and Mark Holt before his bankruptcy.[1] For the reasons set forth below, I conclude that although Doughty's potential personal tort liability to the Holts has been discharged, they may continue prosecuting their state court action against him "in name only" in an effort to collect against such insurance proceeds as may be available.

The question whether Doughty's insurer is or can be liable to satisfy the Holts' claims is a state law issue involving Doughty's insurer, which is not a party to this proceeding. After explaining how bankruptcy principles apply and ordering that judgment enter accordingly, I leave the parties to resolve that question in the state courts.

### Procedural Posture

Pending before me are cross motions for summary judgment. The debtor, John M. Doughty, asks that I enforce the Code's discharge injunction by enjoining the defendants, Lisa and Mark Holt, from taking any action, including continuing to prosecute their pending state court suit, to "collect the [prepetition] debt allegedly owed to them by Mr. Doughty." The Holts ask that I determine that the discharge injunction "does not bar suit against the former debtor solely to determine liability in order to collect from [his] insurer."

In the course of the pretrial conference I ruled on the parties' motions for interlocutory relief, denying Doughty's request that the Holts' state court suit be enjoined and authorizing the Holts to continue prosecuting that action "for the sole purpose of seeking to recover any damages they are awarded from [Doughty's] insurer."[2]

### Summary Judgment Standard

A motion for summary judgment must be granted if:

---

1. The facts are undisputed. This memorandum sets forth conclusions of law in accordance with Fed.R.Civ.P. 52 and Fed.R.Bankr.P. 7052. Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101, *et seq.*

2. Order dated April 2, 1996; Court Doc. Nos. 16 & 17.

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. F.R.Bankr.P. 7056; F.R.Civ.P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure is applicable to bankruptcy proceedings through Fed.R.Bankr.P. 7056. *Braunstein v. Karger (In re Melon Produce, Inc.)*, 976 F.2d 71, 76 (1st Cir.1992); *Flynn v. New Hampshire Higher Educ. Assistance Found.*, 190 B.R. 139, 141 (D.N.H.1995). Because the parties do not dispute any facts material to this action's outcome, I confine my analysis to determining whether either of them is entitled to judgment as a matter of law. *See One National Bank v. Antonellis*, 80 F.3d 606, 608–609 (1st Cir.1996).

### Facts

Lisa and Mark Holt filed suit against John M. Doughty in April 1995. Doughty filed a voluntary Chapter 7 petition on August 28, 1995, and received his discharge on November 21, 1995.[3] On August 30, 1995, Doughty's counsel wrote to the Holts' attorney, notifying him of the bankruptcy filing, explaining that the state court action was stayed and informing him that, as a consequence, Doughty would not be answering the Holts' complaint. Doughty did not list the Holts as creditors on his bankruptcy schedules.

Doughty's is a "no asset" bankruptcy case. The clerk issued a Fed.R.Bankr.P. 2002(e) notice informing creditors that, because no assets were available for administration, they need not file proofs of claim. The Holts initiated no action in Doughty's bankruptcy case and, until November 1995, after Doughty's discharge, the state case lay dormant.

On November 27, 1995, Doughty moved to dismiss the Holts' tort suit on the ground that such liability as he might have to them

had been discharged in bankruptcy. The state court denied the motion. This adversary proceeding ensued.

### Discussion

1. *The Holts' Claim, Doughty's Schedules and the Bankruptcy Discharge.*

■ Whether Doughty's personal liability to the Holts has been discharged in his Chapter 7 bankruptcy is not meaningfully at issue.[4] The discharge order of November 21, 1995, extinguished it, whether or not the Holts were listed as creditors in Doughty's schedules. Here's why:

The Holts do not claim that Doughty's debt to them is within the discharge exceptions of § 523(a)(2), (a)(4), (a)(6) or (a)(15). Thus, § 523(a)(3)(B) does not come into play. Accordingly,

The long and the short of it is this: Section 727 provides for the discharge of prepetition obligations (scheduled or not), and references the exceptions to discharge listed in § 523(a). Among § 523(a)'s exceptions, only § 523(a)(3) addresses the relation of scheduling to discharge. Section 523(a)(3)(A) ... excepts from discharge debts that are not scheduled in time to permit the timely filing of a proof of claim (*unless the creditor had notice or actual knowledge of the case*). In a no-asset Chapter 7 case in which the Rule 2002(e) notice has issued, no time limit for filing proofs of claim is ever established.

*In re McKinnon*, 165 B.R. 55, 56–57 n. 7 (Bankr.D.Me.1994) (emphasis supplied); *see Judd v. Wolfe*, 78 F.3d 110, 114 (3d Cir.1996).

No bar date for filing proofs of claim in Doughty's bankruptcy case has been established. If the Holts were not aware of the bankruptcy before, they surely are now. Thus, Doughty's failure to schedule them as creditors has not prevented their filing a timely proof of claim.[5] Doughty's debt to the

---

3. Doughty's bankruptcy case remains open while unrelated dischargeability litigation pends.

4. The Holts' current counsel does not pretend that it is. The brief discussion that follows in the text is offered as a summary exposition of pertinent principles.

5. If assets are discovered and the case is reopened, creditors will be given notice pursuant to Fed.R.Bankr.P. 3002(c)(5) and such a bar date will be set.

Holts is, therefore, discharged under the Code. *See* § 727(b).

### 2. Post–Discharge Proceedings and Insurance.

█ The Bankruptcy Code ensures a debtor's fresh start by enjoining creditor action to collect discharged claims from the debtor. Insofar as applicable here, it provides:

### § 524. Effect of Discharge.

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

\* \* \* \* \* \*

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.[6]

█ From § 524(a) it plainly appears that the discharge injunction bars creditors from pursuing any discharged obligation *as a personal liability of the debtor.* Taken together with § 524(e), it has led the courts to conclude (virtually unanimously) that the debtor's discharge does not affect such liability as his insurer may have on a discharged obligation. Thus, after discharge and upon expiration of the automatic stay, actions aimed at collecting such an obligation from a debtor's liability insurer are permissible, even when they involve the debtor as a nominal defendant. *See, e.g., Houston v. Edgeworth (In re Edgeworth),* 993 F.2d 51, 54 (5th Cir.1993); *Hendrix v. Page (In re Hendrix),* 986 F.2d 195, 197 (7th Cir.1993) (following *In re Shondel,* 950 F.2d 1301 (7th Cir.1991)); *Green v. Welsh,* 956 F.2d 30, 33 (2d Cir.1992); *Owaski v. Jet Florida Systems, Inc. (In re Jet Florida Systems, Inc.),* 883 F.2d 970, 976 (11th Cir.1989); *Penney v. Town of Middleton,* 888 F.Supp. 332, 342 (D.N.H.1994); *cf. First Fidelity Bank v. McAteer,* 985 F.2d 114, 118 (3d Cir.1993) (addressing credit life insurance and in dictum noting that the discharge injunction does not affect the liability of debtors' insurers); *Walker v. Wilde (In re Walker),* 927 F.2d 1138, 1141–42 (permitting a post-discharge suit naming debtor as necessary to recover from state fund); *see generally* 3 Norton, *Bankruptcy Law and Practice 2d* § 48:5 at 48–14 to –15 (1994) [hereinafter "*Norton*"]; 3 King, *Collier on Bankruptcy* ¶ 524.01 at 524–16 to –17 (15th ed. 1995); 1 Epstein et al., *Bankruptcy* § 3–10 at 138 n. 19 (1992).

Relying on *In re Lundberg,* 152 B.R. 316 (Bankr.E.D.Okla.1993), Doughty contends that the Holts may not permissibly proceed further because, in light of his discharge and his insurance policy's terms, his insurer has no continuing contractual obligation to pay such damages as the Holts may prove. But *Lundberg* supports Doughty's position if and only if I conclude as a matter of law that Doughty's discharge eliminated the possibility that, should they prevail, the Holts might collect their damages from his insurer.[7] Although it is not apparent from the *Lundberg* court's opinion, it must have construed the debtor's liability policy under state (Tennessee) law and determined that the debtor's bankruptcy discharge ended the insurer's duty to pay a discharged claim.

---

**6.** Section 524(a)(3) is not pertinent. It addresses certain "community claims" as they relate to the estate's interest in a debtor's community property. *See* §§ 101(7), 541(a)(2).

**7.** In *Lundberg,* the Resolution Trust Corporation sought leave to continue to prosecute an action, initiated before bankruptcy, against the debtor "in name only" in hopes of collecting from his liability insurance carrier. The bankruptcy court, considering that the debtor had been discharged of personal liability on the claim, held that because he could never become "'legally liable for damages,'" his insurer could never become responsible to pay under the terms of its policy. 152 B.R. at 318.

Although Doughty asserts that this case is identical to *Lundberg* and that the language of his policy is substantially identical to that which the *Lundberg* court considered, Doughty's policy is not before me and his insurer is not a party to this action.[8] The determinative issue is a matter of state contract law, involving the respective rights of Doughty, his insurer and, ultimately, the Holts. *See* 43 Am.Jur.2d *Insurance* § 282 (1982); *accord Golden Rule Ins. Co. v. Atallah*, 45 F.3d 512, 516 (1st Cir.1995) (interpreting insurance policy by applying Maine contract law and rules of construction); *Palmer v. Mutual Life Ins. Co.*, 324 F.Supp. 254, 256–57 (D.Me.1971) (general rules of construction apply to insurance contracts).

Maine courts construe insurance contracts strictly against the insurer. *See Patrons–Oxford Mutual Ins. Co. v. Dodge*, 426 A.2d 888, 891 (Me.1981) (policy construed strictly against insurer and liberally in favor of insured). Maine law recognizes that one function of insurance is to compensate injured accident victims. *Id.* at 890. Pertinent provisions of Maine's insurance code may come into play. *E.g.*, Me.Rev.Stat.Ann. tit. 24–A, § 2903 (West 1964) (insurer's liability for covered loss "absolute" at time loss occurs). And common sense tells me that an important purpose of insurance is to answer for liabilities that an insured cannot pay. Thus, I leave it to Doughty's insurer to convince the state court that its duty to pay such judgment as the Holts might obtain has been extinguished by Doughty's bankruptcy discharge.[9]

Permitting the Holts to proceed to judgment in state court so that they may attempt to recover from available insurance proceeds does no violence to the Bankruptcy Code's fresh start policy. As the District Court for the District of New Hampshire recently observed, the debtor has "nothing to fear" from a lawsuit such as the Holts'. They will not be able to recover from him personally. If his insurer refuses to defend or to pay, a judgment (default or otherwise) holds no adverse consequences for him. *Penney*, 888 F.Supp. at 342; *see also In re Edgeworth*, 993 F.2d at 54 n. 10; *In re Jet Florida Systems, Inc.*, 883 F.2d at 976. Put simply, Doughty's bankruptcy discharge does not prevent the Holts from naming him in their lawsuit in an effort to recover from his insurer. *Penney*, 888 F.Supp. at 342.[10]

### 3. Laches.

Relying once again on *Lundberg*, Doughty asserts that the Holts, having taken no action in the bankruptcy case, delayed too long and, under the doctrine of laches, may not now proceed in state court. The *Lundberg* court held that because the tort claimant had not filed a timely dischargeability claim, *see* Fed.R.Bankr.P. 4007, or even sought relief from stay, *see* § 362(d) and Fed.R.Bankr.P. 4001, during the bankruptcy case, laches barred its post-discharge suit aimed at collecting from available insurance. 152 B.R. at 319. To permit the tort claimant to proceed notwithstanding its inaction during the bankruptcy case "would be to permit a creditor to rest on his rights and obligations without even recognizing the exis-

---

8. Remarkably, the insurance carrier was not a party in *Lundberg*, either. 152 B.R. at 317. Had the bankruptcy court determined that coverage was available so that the state court litigation could proceed, the carrier would have remained able to contest whether it would be required to pay such judgment as might have been entered.

9. The issue can be confronted in state court one of several ways. The insurer may file a declaratory judgment action seeking a determination of coverage under the policy. *See* Me.Rev.Stat.Ann. tit. 14, § 5953; *Maine Mutual Fire Ins. Co. v. Grant*, 674 A.2d 503 (Me.1996); *Concord General Mutual Ins. Co. v. Home Indem. Co.*, 368 A.2d 596, 597 (Me.1977). Or the Holts, after obtaining judgment against Doughty, may sue his in-

surer in a "reach and apply" action. *See* Me. Rev.Stat.Ann. tit. 24–A, § 2904 (authorizing judgment creditors to initiate civil action against insurer to have insurance moneys applied to insured's judgment debt); *see generally Amoco Oil Co. v. Dingwell*, 690 F.Supp. 78 (D.Me.1988), *aff'd sub nom. Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir.1989).

10. Several courts have observed aptly that the fresh start policy "is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured." *In re Jet Florida Systems, Inc.*, 883 F.2d at 975; *see also In re Edgeworth*, 993 F.2d at 54; *Green*, 956 F.2d at 33; *In re Shondel*, 950 F.2d at 1308.

**6**

tence of the bankruptcy." *Id. Lundberg* is unconvincing on this point.

■ For starters, I am not persuaded that laches applies. The case before me, unlike *Lundberg,* was initiated by the debtor's complaint seeking an injunction, not by the creditor's petition to reopen and obtain modification of the discharge injunction.[11] Thus, it is unclear of what bankruptcy-related delay Doughty might complain. But, assuming the doctrine has relevance to this controversy, Doughty may successfully assert it only by demonstrating (1) the Holts' lack of diligence and (2) a resulting prejudice to him. *See Kansas v. Colorado,* —— U.S. ——, ——, 115 S.Ct. 1733, 1742, 131 L.Ed.2d 759 (1995); *Tully Construction Co., Inc. v. Cannonsburg Envtl. Assoc., Ltd. (In re Cannonsburg Envtl Assoc., Ltd.),* 72 F.3d 1260, 1267 (6th Cir.1996).

The delay in this case—from Doughty's bankruptcy until just after his discharge entered—totalled four months.[12] It was occasioned by the Holts' observance of § 362's automatic stay, a provision triggered by Doughty's voluntary bankruptcy petition. *Cf. McKinney v. Waterman Steamship Corp.,* 925 F.2d 1, 3, 6 (1st Cir.1991) (seaman's delay in bringing equitable action not necessarily unreasonable to the extent occasioned by bankruptcy stay). And, given the fact that the Holts may collect, if at all, only from Doughty's insurer, he personally has suffered no conceivable prejudice.[13]

11. When a creditor proceeds against a debtor on a discharged obligation solely for the purpose of attempting to collect from the debtor's insurance carrier, an activity arguably within the express purview of § 524(a)(2)'s limitation on the discharge injunction, it is doubtful that the creditor is required to seek and obtain modification of the injunction from the bankruptcy court. *See, e.g., In re Hendrix,* 986 ·F.2d at 199; *Green,* 956 F.2d at 33–34 (collecting cases); *In re Shondel,* 950 F.2d at 1307; *In re Jet Florida Systems, Inc.,* 883 F.2d at 976; *Norton,* § 48:5 at 48–15. The issue is not before me today. All post-discharge activity in the state court (and this court) has been initiated by Doughty.

12. The automatic stay expired as to the Holts' action upon Doughty's discharge. § 362(c)(2)(C).

The delay in *Lundberg* was not much longer. The debtor filed for bankruptcy in July. He

*Conclusion*

For the reasons set forth above, summary judgment will enter against the debtor, and in favor of the Holts. The Holts are free to pursue their state court action against the debtor, subject to the restrictions of § 524(a)(2).

received his discharge and the case was closed in October. In December the creditor filed a motion seeking to reopen the case and to modify or vacate § 524(a)'s injunction. 152 B.R. at 317–18.

13. There was no action that the Holts could have taken with Doughty's bankruptcy that would have altered their fate if, as Doughty argues, potential recovery against his insurance has been rendered unavailable by virtue of the bankruptcy discharge. Their claim against Doughty is not of a character that could have been established as nondischargeable under any of § 523(a)'s provisions. Even had they moved for relief from stay to pursue recovery from Doughty's insurance, the discharge order would have left them where they stand today vis a vis such a potential recovery. *Cf. Lundberg,* 152 B.R. at 319 (suggesting that laches applied because the creditor sought neither a dischargeability determination or relief from stay before the case was closed).